UNITED STATES, Appellee,

v.

Don D. DAWSON, Private, U. S. Army, Appellant.

No. 38,445.

CM 438463.

U. S. Court of Military Appeals.

Jan. 12, 1981.

For Appellant: *Captain Melvin Abercrombie* (argued); *Colonel Edward S. Adamkewicz, Jr., Major Grifton E. Carden* (on brief).

For Appellee: *Captain Michael C. Chapman* (argued); *Colonel R. R. Boller, Major Ted B. Borek, Captain Brian X. Bush* (on brief).

Opinion

FLETCHER, Judge:

This case requires us to examine a certain plea–bargaining practice in the armed services.

On April 27, 1979, Brigadier General Healy, an acting general court–martial convening authority, referred to a general court–martial various charges and specifications against the appellant. Shortly thereafter, on April 30, 1979, the appellant, with advice of counsel, entered into a pretrial agreement with General Healy. In return for the appellant's pleas of guilty, this acting general court–martial convening authority promised to approve a sentence no greater than a dishonorable discharge, *confinement at hard labor for 2 years, total forfeitures for 2 years* and reduction to the pay grade of E–1. There was not provision for the convening authority to suspend any portion of the sentence as authorized under Article 71, Uniform Code of Military Justice, 10 U.S.C. § 871. *See* Article 72(a), UCMJ, 10 U.S.C.A. § 872(a). The agreement did include the following provision:

It is expressly agreed by the accused that he will not commit any violation of the Uniform Code of Military Justice between the date of trial and the date of the convening authority's action. Such a violation will authorize the convening authority to approve any sentence adjudged.

On May 9, 1979, the appellant was arraigned on four separate charges under the Uniform Code of Military Justice. He pleaded guilty to attempted larceny, conspiracy to commit housebreaking, and housebreaking, in violation of Articles 80, 81, and 130, UCMJ, 10 U.S.C. §§ 880, 881, and 930, respectively. An additional charge of breaking restriction was dismissed upon motion of the defense prior to pleas. The military judge approved the pretrial agreement and accepted these pleas of guilty. He entered findings of guilty to these charges. The judge then sentenced the appellant to a dishonorable discharge, *confinement at hard labor for 5 years, total forfeitures,* and reduction to the pay grade of E–1.

After appellant's trial, a military police investigation report was prepared concerning the appellant. It stated that he wrongfully possessed marihuana and lysergic acid diethylamide (LSD) on May 9, 1979, at the Mannheim Confinement Facility. Papers attached to the record of trial indicate that when the appellant's clothes were searched during his post–trial check–in at the prison, the drugs were discovered. The staff judge advocate forwarded these papers to the convening authority and advised him that he was no longer bound by the pretrial agreement. Defense counsel in a post–trial rebuttal letter challenged the allegation that the appellant's possession of drugs was with the requisite criminal knowledge. On July 14, 1979, the regular convening authority, Major General Otis, approved the greater sentence awarded by the military judge rather than that contained in the pretrial agreement. *The difference is three years' confinement at hard labor and forfeitures for that period.* The convening authority did not provide an opportunity for the appellant to withdraw his previous pleas of guilty.

The following issues are before us for review:

I

WHETHER THE STAFF JUDGE ADVOCATE'S REVIEW WAS PREJUDI-

CIALLY INADEQUATE BECAUSE IT DID NOT SPECIFY THE ARTICLE OF THE UCMJ ALLEGEDLY VIOLATED BY THE APPELLANT'S POST–TRIAL CONDUCT, IDENTIFY THE ELEMENTS WHICH COMPRISE THE VIOLATION OR DISCUSS THE SUFFICIENCY OF THE EVIDENCE THAT WOULD ESTABLISH THOSE ELEMENTS, SO AS TO PROVIDE THE CONVENING AUTHORITY WITH A BASIS UPON WHICH TO APPROVE THE ADJUDGED SENTENCE AND THEREBY DEPART FROM THE LIMITATION ON SENTENCE CONTAINED IN THE PRETRIAL AGREEMENT.

## II

WHETHER THE CONVENING AUTHORITY'S DEPARTURE FROM THE LIMITATION ON SENTENCE IN A PRETRIAL AGREEMENT, PURSUANT TO A "NO MISCONDUCT" PROVISION, WHERE THE APPELLANT DENIES THE ALLEGATION OF MISCONDUCT, WITHOUT FURTHER INQUIRY VIOLATES DUE PROCESS.

### Specified Issue

WHETHER THE POST–TRIAL MISCONDUCT PROVISION IN APPELLANT'S PRETRIAL AGREEMENT IS VOID AS A MATTER OF PUBLIC POLICY OR LAW.

In light of the above, an important question emerges from this case which has not yet been squarely answered by this Court.

See United States v. Lanzer, 3 M.J. 60, 62 n.4 (C.M.A.1977); United States v. Goode, 1 M.J. 3 (C.M.A.1975). Is this type of post–trial code violation provision a proper condition to be included in a pretrial agreement in the military justice system?

■ The Government notes that both parties to this agreement were represented by counsel. It also asserts that they possessed relatively equal bargaining power and were mutually advantaged by the agreement. Accordingly, it initially urges us to refrain from interfering with the voluntary product of "the give and take" in the plea bargain negotiation process. See generally Bordenkircher v. Hayes, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978). This approach to the question must be rejected. It not only assumes an answer to the question posed, but it would exclude from appellate review a significant and substantial facet of our criminal justice system. See generally Note, Plea Bargaining and the Transformation of the Criminal Process, 90 Harv.L.Rev. 564 (1977). There are limits placed on the practice of plea bargaining by constitutional, statutory and decisional law. United States v. Lanzer, supra; see Borderkircher v. Hayes, supra at 365, 98 S.Ct. at 669. In this light, we have stated that the rules of the market place are not permitted to operate unregulated in the military justice system. See United States v. Andreason, 23 U.S.C.M.A. 25, 28, 48 C.M.R. 399, 402 (1974); United States v. Cox, 22 U.S.C.M.A. 69, 71, 46 C.M.R. 69, 71 (1972). Accordingly, despite the mutual assent of the parties,[1]

---

1. This case is easily distinguished from United States v. Schmeltz, 1 M.J. 8, 11 (C.M.A.1975). There was not the slightest indication in that case that the challenged provision originated with the Government. Here, the contrary is true. The record of trial in this case indicates that this particular provision was common for courts–martial within the appellant's division in the Army. This is surprising in view of the position of discouragement toward such provisions adopted by the Army Court of Military Review in United States v. Alvarez, 5 M.J. 762, 764 n.6 (A.C.M.R.1978). In any event, it must also be noted that a similar provision was recommended by the Army Lawyer, a legal publication of Army JAG. See Hunter, A New Pretrial Agreement, The Army Lawyer (DA Pam.

27–50–10) at 23 (October 1973). Moreover, in all fairness, other commentators have also indicated, with some marked variations, approval of a similar express post–trial misconduct provision. See Della Maria, Negotiating and Drafting The Pretrial Agreement, 25 JAG Journal 117, 123 (1971); see also Moyer, Justice and the Military § 2–457 (1972). Other commentators have failed to include such a provision in their treatment of this area. See Staff Judge Advocate Handbook, (DA Pam. 27–5) Annex K, App. L at 141–42 (July 1963); Secnavinst 5811.1, September 11, 1957; Secnavinst 5811.2, December 17, 1957. See also Melhorn, Negotiated Pleas in Naval Courts–Martial, 16 JAG Journal 103, 106 (1962); McMenamin, Plea Bargaining in the Military, 10 American

we must assess the propriety of this particular pretrial agreement provision and its operation in the present case in view of the basic tenets of the military justice system. Article 67, UCMJ, 10 U.S.C. § 867; *see* Article 45, UCMJ, 10 U.S.C. § 845.

A proper analysis of this pretrial agreement provision must embrace at least three basic questions. First, what does this clause actually entail? Second, what is the purpose of the parties in placing such a provision in a pretrial agreement? Third, what is its impact on the pretrial agreement as a whole and the guilty pleas induced thereby? Evaluating this clause from these three perspectives, we can then determine whether its inclusion in the pretrial agreement or its operation in the present case violates the Code, the Manual or applicable case law.

I

From the first sentence of the challenged clause, it is clear that the appellant agreed to abstain from the commission of "any violation of the Uniform Code of Military Justice"[2] between the date of his trial and the date of the convening authority's action. At first glance, this promise appears to be the material concession by the appellant contained in this clause. However, it must be noted that this promise creates no new obligation for the appellant[3]; as a service member he is already subject to the Code during this post–trial period. *See* Article 2, UCMJ, 10 U.S.C. § 802. It is in the second sentence of the clause that the real substance of the appellant's promise appears. He has agreed to allow the convening authority to repudiate the pretrial agreement upon the occurrence of his post–trial violation of the Code. In effect, the parties have authorized a procedure by which the appellant's subsequent criminal offenses may be treated by the convening authority.

More particularly, a convening authority has the discretionary power to approve the sentence as awarded by the court–martial or any lesser portion thereof. *See* Article 64, UCMJ, 10 U.S.C. § 864. By entering a pretrial agreement, the convening authority through sentence concessions effectively sacrifices a portion of this discretionary sentence–approval power for the accepted guilty pleas. This was done in appellant's case. The challenged clause, however, permits the convening authority to recapture this bargained–away approval power in order to deal with the appellant for his subsequent codal transgressions.

This rather terse provision leaves open several important details critical to such an understanding between the convening authority and the appellant. First, who is to decide whether a violation of the Code was committed by the appellant during this period? There are several fact finders available, *e. g.*, the convening authority, his staff judge advocate, prison officials, an Article 15 commander, an administrative board, military judge, court members, or the appellant. Second, what standard of proof is sufficient under this agreement to show that a violation of the Code was committed by the appellant? Again, several alternatives of proof are available, *e. g.* mere whim, an allegation, a preponderance, clear and convincing, beyond a reasonable doubt, or an admission by the appellant. Third, what procedure must be employed by the fact finder, whomever it may be, to conclude this undefined burden of proof has been met? Again the options are myraid, *e. g.* a court–martial, an Article 15 proceeding, an administrative hearing, submission of affidavits, *ex parte* investigation by command, or the *Goode* procedure. Finally, must the appellant be permitted an opportunity to withdraw his previously entered and accepted guilty plea if the convening

---

Criminal Law Review 93 (1971); McGovern, *Guilty Plea–Military Version*, 31 Federal Bar Journal 88 (1972).

**2.** Unlike the situation in *United States v. Goode*, 1 M.J. 3 (C.M.A.1975), where the ac-

cused agreed not to commit "any act of misconduct," the language before us inextricably links this clause to the military justice system established by Congress.

**3.** *See* Simpson, *Contracts*, § 58, pp. 99–102.

authority decides to exercise his option and not abide by the previously determined sentence limitations? *See Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). All these questions are unanswered on the face of this agreement.

■ This Court must first decide whether as a matter of law, it can enforce such a clause in this incomplete state. We note that it is an essential element in all contracts that both parties state with reasonable certainty what it is they are undertaking or the contract must fail for indefiniteness. *See* Simpson, *Contracts* § 43, p. 67 (2d ed., 1965). The Government argues that, while certain aspects of this clause may be unstated, this post–trial code violation clause must be viewed in light of *United States v. Goode, supra*. Accordingly, it asserts that the parties intended the convening authority to be the ultimate finder of fact based on the post–trial review and rebuttal submitted by the defense counsel.

Even accepting this argument, several critical factors mentioned above remain unresolved. The decision in *United States v. Goode, supra*, did not treat these important matters. Moreover, the government's interpretation of the clause is not based upon any express wording in the pretrial agreement itself. *See United States v. Veteto*, 18 U.S.C.M.A. 64, 39 C.M.R. 64 (1968). This Court is not inclined to act on the basis of mere conjecture. Finally, as far as implying terms in a pretrial agreement, this Court has clearly eschewed such a practice in *United States v. Cox, supra* 22 U.S.C.M.A. at 71, 46 C.M.R. at 71 (footnote omitted):

> The host of implications of contracts common to the marketplace have no counterparts in criminal law. Since modern day administration of justice recognizes bargains for pleas as a judicial way of life, the better rule demands maximum clarity; therefore, implications are disfavored.

Therefore, the terms of this agreement are not sufficiently clear as required by our case law. In light of such contractual uncertainty this Court or any court would be sorely pressed to enforce such an agreement in this form.

## II

The second point of our analysis goes to the purpose of the post–trial codal violation clause in this agreement. If the parties intended to accomplish some end either prohibited by the Uniform Code of Military Justice or achieved by a means unauthorized or inconsistent with military law, this provision cannot be considered lawful. *See Runkle v. United States*, 122 U.S. 543, 556, 7 S.Ct. 1141, 1146, 30 L.Ed. 1167 (1887). Such an inquiry is hampered in the present case because the record does not state the particular reason this clause was included in the pretrial agreement. Nevertheless, the clause itself gives rise to several answers to this question.

One commentator has suggested that such a provision provides assurance to the convening authority that the pretrial agreement is serving its rehabilitative purpose. *See* Della Maria, *Negotiating and Drafting the Pretrial Agreement*, 25 JAG Journal 117, 123 (1971). This implies that the sole intent of the convening authority in entering this agreement was to assist the appellant in his rehabilitation or return to the status of a law–abiding soldier. If the convening authority determines after trial that his faith was misplaced, this clause now permits him to act in a properly informed manner with respect to a recidivist accused.

One problem with such an approach in the present case is that the appellant is still bound by the earlier entered and accepted guilty pleas. From his standpoint the convening authority retains the administrative benefits of a guilty plea. *See Brady v. United States*, 397 U.S. 742, 752, 90 S.Ct. 1463, 1471, 25 L.Ed.2d 747 (1970). He does so without regard to the meaningful consideration previously conveyed to him by reason of the guilty pleas themselves. *See Santobello v. New York, supra.*

■ This approach to the pretrial agreement ignores the acknowledged realities of plea bargaining. The resolution of

the original criminal charges without a full–blown trial saved the convening authority time, manpower and money. *See* Note, 90 Harv.L.Rev. (*supra*) at 571–76. The accused has waived valuable constitutional and procedural rights by entering a guilty plea. *See United States v. Care*, 18 U.S.C.M.A. 535, 40 C.M.R. 247 (1969). In this light, our case law has clearly recognized that the pretrial agreement may not be treated as a one–way street by the convening authority. *See United States v. Cox, supra.* A plea agreement is more than an incidental mechanism for the convening authority to exercise clemency or insure the rehabilitation of an accused. Therefore, the use of this clause in this fashion conflicts with our basic understanding of the plea–bargaining process and the societal interests at stake therein.

A second purpose for the inclusion of this clause in the pretrial agreement is to prevent the appellant from escaping punishment for codal violations occurring during this post–trial period. *See United States v. Lang*, 30 C.M.R. 584, 585 (N.B.R.1960). The appellant has just caused the command to bear the expense of a court–martial and he has received his sentence. A second court–martial for subsequent offenses so soon thereafter would bring additional costs both in money and manpower to the convening authority. Rather than allow the appellant to go unpunished for these additional offenses, it would be more efficient and practical for the convening authority to simply deprive him of the benefits of his earlier pretrial agreement in order to punish him for these subsequent codal violations.

It must be remembered that punishment for a violation of the Uniform Code of Military Justice during this period may be imposed lawfully in several ways.

1. These infractions can be treated at a disciplinary proceeding authorized under Article 15, or Article 20, UCMJ, 10 U.S.C. §§ 815, 820, respectively, with their attendant minimum due process protections. *See generally Middendorf v. Henry*, 425 U.S. 25, 96 S.Ct. 1281, 47 L.Ed.2d 556 (1976).

2. These infractions can be treated at a separate special or general court–martial with its full–blown criminal trial due process protections.

3. If the convening authority promised to suspend the sentence rather than approve the lower term (Article 71, *supra*), these infractions could have been treated at a vacation hearing (Article 72(a), *supra*) with certain due process protections. *See United States v. Rozycki*, 3 M.J. 127 (C.M.A. 1977); *United States v. Bingham*, 3 M.J. 119 (C.M.A.1977); *see also United States v. Williams*, 21 U.S.C.M.A. 292, 45 C.M.R. 66 (1972).

4. Conceivably, these infractions in the appellant's case could have been handled at a prison disciplinary hearing as provided in pertinent service regulations. *See Vitek v. Jones*, 445 U.S. 480, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980); *see also Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). *See generally United States v. Richardson*, 8 M.J. 157 (C.M.A. 1980).

These lawful punishment mechanisms provide the convening authority with the clear responsibility and power to insure law and order in his command. Congress has recognized this responsibility and in the course of its constitutional duty has provided the above authorized means for the commander to accomplish this end. What Congress has not done is to allow the convening authority or his staff judge advocate through contractual artifice to summarily punish service members for violations of the Code. *See United States v. May*, 10 U.S.C. M.A. 358, 366, 27 C.M.R. 432, 440 (1959). Regardless of the efficiency and practicality of this punishment mechanism, it cannot be allowed to supplant the letter and spirit of congressional enactments. U.S. Const. art. I § 8; *see In Re Yamashita*, 327 U.S. 1, 16, 66 S.Ct. 340, 348, 90 L.Ed. 499 (1946). This intended use of the contract provision is unlawful.

██ A third purpose for this clause has been suggested by its most outspoken critic, Judge Baum of the United States Navy Court of Military Review. *See United*

States v. Johnson, 2 M.J. 600, 603 (N.C.M.R. 1976) (Baum, J., lead opinion). Under the Judge's theory, a gap in the suspension power of the convening authority was thought to exist between the time the sentence was announced and action was taken by the convening authority. *See also United States v. Ferguson*, 45 C.M.R. 478, 480 (A.C.M.R.1972), *pet. denied*, 45 C.M.R. 928, 21 U.S.C.M.A. 643 (1972); *United States v. Conway*, 43 C.M.R. 512 (A.C.M.R.1970); *United States v. Clay*, 42 C.M.R. 397 (A.C.M.R.1970); *United States v. Franklin*, 41 C.M.R. 431, 434–35 (A.C.M.R.1969), *pet. denied*, 19 U.S.C.M.A. 597 (1969). This occurred because as a matter of law the convening authority could not vacate a suspended sentence on the basis of misconduct occurring prior to the inception of the suspension period. *See* para. 97*b*, Manual for Courts–Martial, United States, 1969 (Revised edition). This clause was designed to correct this perceived inequity. It enabled the convening authority to avoid suspending the sentence when such misconduct occurred prior to his action. *See United States v. Johnson, supra.*

Though some merit might have existed for this position in the past, Judge Baum correctly notes that the gap no longer exists. In *United States v. Williams, supra* at 295, 45 C.M.R. at 69 (1972), this Court stated:

> In our opinion, misconduct which takes place between the date of a court–martial sentence and that on which a probationary action is signed, may be considered in a hearing to revoke probation under Article 72(a), Code, *supra.*

In *Williams*, of course, the Court was not dealing with a pretrial agreement for a suspended sentence but with suspension as a matter of largesse by the Judge Advocate General. Moreover, in *United States v. Cox, supra*, this Court held that it would not imply a condition in the pretrial agreement that the accused promise good behavior prior to the suspension action by the convening authority. However, both cases together can be read to clearly permit a convening authority and an accused to agree that any vacation of a suspended sentence can be based on post–trial misconduct prior to the convening authority's suspension action.

The convening authority and the appellant did not agree to a suspended sentence as provided in the Code. *See* Article 71, *supra.* Therefore, the use of this clause in the present case is inappropriate even under the Judge's theory. Moreover, an additional vice in the appellant's post–trial codal violation clause is that it side–steps the key requirement of Article 72, *supra, e. g.* a suspension hearing. *See United States v. Lallande*, 22 U.S.C.M.A. 170, 46 C.M.R. 170 (1973). The trial counsel in a letter dated June 7, 1979, which was attached to the report of appellant's misconduct, pointed this fact out to the convening authority. The use of this clause to create a suspension status without the minimum due process protections provided by Congress is clearly contrary to the Code.

III

█ The third subject for our inquiry is the contractual impact this clause has on the pretrial agreement as a whole and the guilty pleas it has induced. In this light, we can determine whether public policy as reflected in our plea bargaining system would find such a clause acceptable. At the outset, we must note that some difficulty exists in categorizing this provision's operation as a matter of contract law.

The Government argues that a violation of the Code by the appellant should be viewed in this context as a failure of consideration on his part or his failure to meet a condition precedent necessary for performance of the contract. Such a failure prevents from arising on the part of the convening authority any obligation to approve the sentence as earlier promised. *See* Simpson, *supra*, § 158, p. 330; *see also* Della Maria, *supra.* Under this view, a central purpose of the pretrial agreement is to prepare for the post–trial contingency of criminal acts by the appellant by deterring them in the first instance. This Court does not differ with the Government as to the desir-

ability of law–abiding conduct in the military society. We do not believe, however, that this pretrial agreement clause is a proper tool to accomplish this end.

This Court has taken the longstanding position of refusing to encourage expansive pretrial agreement provision–making by military authorities. *See United States v. Partin*, 7 M.J. 409, 411 n.3 (C.M.A.1979); *United States v. Holland*, 1 M.J. 58 (C.M.A. 1975). This is because of the sensitive position of plea negotiations in our criminal justice system. *See* Note, *The Unconstitutionality of Plea Bargaining*, 83 Harv.L. Rev. 1387 (1970). Military authorities have long been on notice that this Court will carefully scrutinize plea bargain agreements and their operation. *See United States v. Welker*, 8 U.S.C.M.A. 647, 25 C.M.R. 151 (1958); *United States v. Allen*, 8 U.S.C.M.A. 504, 25 C.M.R. 8 (1957). In fact, this Court has said that the pretrial agreement should be limited to bargaining for charges, sentence and pleas. *See United States v. Cummings*, 17 U.S.C.M.A. 376, 38 C.M.R. 174 (1968); *see also United States v. Brady*, 17 U.S.C.M.A. 614, 38 C.M.R. 412 (1968); *United States v. Pratt*, 17 U.S.C. M.A. 464, 467, 38 C.M.R. 262, 265 (1968); Fed.R.Crim.P. 11(c)(1). Accordingly, to attempt to treat the post–trial criminal conduct of the appellant through the plea agreement in this undelineated manner exceeds the scope of plea negotiation approved by this Court.

A second possible contractual view of the failure of the appellant to abide by the Code is that it creates a material breach of the pretrial agreement. *See* Simpson, *supra*, § 198, p. 399. Under this theory, the convening authority unilaterally may approve the difference between the agreed sentence and that awarded by the court–martial as liquidated damages. Again, we must note that such unrestrained marketplace thinking has no place in the criminal justice system. *See United States v. Andreason, supra* 23 U.S.M.C.A. at 28, 48 C.M.R. at 402. Moreover, to equate monetary damages with time in confinement is to ignore reality and to denigrate the integrity of the military justice system.

A third possible contractual view of the appellant's violation of the Code is that it constitutes a failure of a condition subsequent. Such a failure would relieve the convening authority of his existing liability to perform under the pretrial agreement. *See* Simpson, *supra*, § 144, at 301. In this light and especially under the circumstances of this case, plea bargaining becomes of little use to the defendant in minimizing the uncertainty and rigors of sentencing. *See generally* 90 Harv.L.Rev. (*supra*) at 576. Additionally, the supervision of the plea–bargaining process, now within the province of the military judge at trial, is effectively transferred to the convening authority, a party to the agreement, in his post–trial action. *See also United States v. Swinehart*, 614 F.2d 853, 857 (3rd Cir.1980); *United States v. Simmons*, 537 F.2d 1260 (4th Cir.1976). Finally, a real question exists as to the validity of the previously entered and accepted pleas when the convening authority subsequently decides not to abide by the sentence limitations which induced them in the first instance. *See Santobello v. New York, supra.*

The plea bargaining process in the military justice system and in our federal court system is designed to implement particular public policies. *See* 90 Harv.L.Rev., *supra.* It is not designed, through provision for contractual artifice, to achieve all public policies or even laudable ones, which seriously detract or hamper its primary function: the speedy but fair administration of justice for crimes committed. To link crimes committed in the past with the prevention of crimes which may or may not be committed in the future by contractual whim of the parties impermissively burdens this criminal–law mechanism to the detriment of a just resolution of both sets of criminal charges.

The above analysis reveals the patent unlawfulness of this post–trial codal violation clause. Yet, there are many cases from the United States Navy Court of Military Review which have embraced pretrial agree-

ment clauses similar to the one in this case.[4] The United States Army Court of Military Review has reluctantly approved, but not recommended, the use of this type of provision.[5] The basis of this judicial acceptance is portions of this Court's opinion in *United States v. Goode, supra*, which in particular disapproved a similar clause's operation in an *ex parte* fashion. To the extent that *United States v. Goode, supra*, is cited as support for the clause in the appellant's case, we find such an argument unpersuasive.

■ This Court on numerous occasions has attempted to discourage a marketplace mentality from pervading the plea–bargaining process and to prevent contract law from dominating the military justice system. *See United States v. Andreason, supra; United States v. Cox, supra.* Be this as it may, some elements of plea bargaining necessarily entail a basic application of contract law and marketplace principles. *See Borderkircher v. Hayes, supra.* In this light, we do not believe *United States v. Goode, supra*, permits the present parties to ignore the basic element of contract law which is missing from their pretrial agreement. The material conditions of their contract must be sufficiently definite or certain. Uncertainty, as in the present case, could lead to the enforcement of the pretrial agreement at the whim or caprice of the convening authority, and that cannot be tolerated. *See United States v. Lallande, supra.*

To repeat, this Court has discouraged the use of expansive pretrial–agreement provisions by military authorities. Such a position rests in part on our concern that these agreements accomplish a just and fair determination of the charges outstanding against a servicemember for himself and the military society. Properly limited plea bargaining has been recognized as a valuable component of our justice system. In this light, we do not believe *United States v. Goode, supra*, intended that these agreements be employed carte blanche so as to impair public confidence in this important element of our justice system or discourage its use. *See United States v. Schreck*, 9 M.J. 217 (C.M.A.1980).

Finally, this Court has clearly stated that pretrial–agreement provisions which entail waivers of constitutional or codal rights otherwise not waived by a guilty plea are void. *See United States v. Holland, supra; United States v. Cummings, supra.* Our decisions have primarily dealt with certain trial rights of an accused which are not waived by his pleas. We do not believe that *United States v. Goode, supra*, can be read to support additional waivers of constitutional or codal rights of similar magnitude which concern subsequent alleged violations of the military criminal code. *Cf. Martinez v. Romero*, 626 F.2d 807, 809 (10th Cir.1980); *United States v. Scoles*, 14 U.S.C. M.A. 14, 33 C.M.R. 226 (1963).

It was error for this post–trial code violation clause to be approved as part of appellant's pretrial agreement. As a result, the appellant's approved sentence in this case was 3 years greater than the limit bargained for in his pretrial agreement. Moreover, he was not permitted any opportunity to withdraw his guilty pleas after the convening authority's action. The operation of the clause in this manner clearly prejudiced the appellant. Article 59(a), UCMJ, 10 U.S.C. § 859(a). *Cf. United States v. Partin, supra; United States v. McCray*, 7 M.J. 191 (C.M.A.1979).

The unbargained–for portion of the sentence approved by the convening authority is set aside. The findings of guilty and the sentence (except for confinement in excess of 2 years) are affirmed.

---

4. *See United States v. D'Aiello*, 7 M.J. 539 (N.C.M.R.1979); *United States v. French*, 5 M.J. 655 (N.C.M.R.1978); *United States v. Jacox*, 5 M.J. 537 (N.C.M.R.1978); *United States v. Rankin*, 3 M.J. 1043 (N.C.M.R.1977); *United States v. Pryor*, 3 M.J. 737 (N.C.M.R.1977); *United States v. Dugger*, 1 M.J. 1069 (N.C.M.R. 1976). *Cf. United States v. Johnson*, 2 M.J. 600 (N.C.M.R.1976).

5. *United States v. Alvarez*, 5 M.J. 762 (A.C.M. R.1978).

EVERETT, Chief Judge (concurring in result):

As the principal opinion makes clear, the questioned provision in the pretrial agreement is too vague to be enforcible. The agreement does not indicate that the parties contemplated that the procedure mandated by *United States v. Goode*, 1 M.J. 3 (C.M.A.1975)—namely, response by trial defense counsel to the staff judge advocate's review—would provide the framework within which appellant could dispute a determination of post–trial misconduct. Moreover, it seems unlikely that, as to the existence of post–trial misconduct, the appellant intended to leave the issue for resolution by the *ipse dixit* of the staff judge advocate or the convening authority. Certainly, if that was the intent of the parties, it should have been ascertained by a more extensive providency inquiry than that which took place.

In my view, the condition subsequent as to post–trial misconduct–a condition imposed for the benefit of the Government– was a nullity and can be ignored for all purposes. Thus, there is no need to determine whether the failure of the military judge to discuss fully this particular condition vitiated the providency of the guilty plea; and appellant is entitled to the enforcement of the pretrial agreement according to those terms which remain after severance of the provision as to post–trial misconduct.

If post–trial misconduct may be utilized under any circumstances to deprive an accused of the benefit of a pretrial agreement–a matter as to which I express no opinion at this time–the minimal requirements for doing so should include (a) a detailed, explicit, and well–drafted provision to this effect in the pretrial agreement; (b) inquiry by the military judge to assure that the accused understood the full import of such terms in the pretrial agreement; (c) a hearing on the alleged post–trial misconduct, which at least embodies all the procedural safeguards of a hearing for vacation of suspension pursuant to Article 72, Uniform Code of Military Justice, 10 U.S.C. § 872.

COOK, Judge (dissenting):

Conditioning a promise of specified clemency action in regard to sentence on a promise by accused that he will not engage in unlawful conduct before the time specified for that action is not unique in American law. Apparently, it is an established part of the procedure in the trial courts of Florida known as withholding of adjudication of guilt under which the defendant must not violate the state's penal law between the decision to withhold and the time of probation. *See United States v. Cook*, 10 M.J. 138 (C.M.A.1981). It was expressly recognized by this Court in *United States v. Goode*, 1 M.J. 3 (C.M.A.1975). There, the Court prescribed the procedure to effectuate the condition upon a violation thereof by the accused. The principal opinion is, therefore, contrary to *Goode*, where the Court implicitly approved an agreement stating that "any act of misconduct between the date of trial and the date of the Convening Authority's action" would "authorize the Convening Authority to approve any sentence adjudged and not suspend the same." *Id.* at 5.

In *Goode*, the Court rejected a defense argument that a full hearing was required to invoke the good–conduct clause under the terms of Article 72, Uniform Code of Military Justice, 10 U.S.C. § 872, because "no suspension exists until the convening authority takes his action on the record."[1] We further observe that prior to the convening authority's action "the sentence is inchoate and the staff judge advocate's review is designed to present the matter of the penalty to be approved to the convening authority impartially and without the need for truly adversary proceedings and no right to be heard as such."[2] While a hearing is not required, as assured by the *Goode* rule, the accused's counsel would be afforded the opportunity to respond to the facts

---

1. *United States v. Goode*, 1 M.J. 3, 5 (C.M.A. 1975).

2. *Id.*

and circumstances of noncompliance with the plea–agreement provisions that are set forth in the staff judge advocate's post–trial review.[3] A formalized adversary hearing with the right of cross–examination is not constitutionally required as a condition precedent to the consideration of adverse evidence on sentencing. *Williams v. New York,* 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949). Under the federal rules, hearsay may be considered. *Gregg v. United States,* 394 U.S. 489, 89 S.Ct. 1134, 22 L.Ed.2d 442 (1969); *Gelfuso v. Bell,* 590 F.2d 754 (9th Cir.1978); *United States v. Dockery,* 447 F.2d 1178 (D.C.Cir.1971), *cert. denied,* 404 U.S. 950, 92 S.Ct. 299, 30 L.Ed.2d 266 (1971); Fed.R.Crim.P. 32. Thus, the *Goode* procedure is consistent with federal civilian practice.

I see no inconsistency between *Goode* and previous decisions of this Court dealing with impermissible conditions. In *United States v. Cummings,* 17 U.S.C.M.A. 376, 38 C.M.R. 174 (1968), the Court struck down a provision in a pretrial agreement which provided for the waiver of a speedy trial or a denial of due process because a plea of guilty under military law does not waive such rights. The Court, likewise, struck down a provision in the pretrial agreement in *United States v. Holland,* 1 M.J. 58, 60 (C.M.A.1975), which required the accused to enter a plea prior to presentation of evidence on motions because the provision constituted an "orchestrati[on]" of the trial and improperly infringed upon the prerogatives of the trial judge. The provision in this case involves post–trial misconduct, and, therefore, it cannot infringe upon the trial procedures within the province of the trial judge. This case is clearly distinguishable from the *Cummings* line of cases because the present agreement does not render the trial procedure a hollow shell, nor does it involve a nonwaivable right.

Referring to a good–conduct provision like the one in this case, Judge Fletcher observed in *United States v. Lanzer,* 3 M.J. 60, 62 n.4 (C.M.A.1977), that "[p]resumably the convening authority could require such a provision unless it was contrary to public policy." He now finds that the provision transgresses public policy, citing *United States v. Johnson,* 2 M.J. 600 (N.C.M.R. 1976). I disagree. In *Johnson,* one judge expressed the opinion that a post–trial good–conduct provision was invalid, but the other two judges of the panel filed separate opinions in which each disagreed with that view of the law. Other cases from the United States Navy Court of Military Review are also contrary to that position.[4]

Post–trial misconduct is a proper matter for the consideration of a convening authority in determination of whether to approve the whole or part of the court–martial sentence. *See United States v. Vara,* 8 U.S.C. M.A. 651, 25 C.M.R. 155 (1958); *United States v. Lanford,* 6 U.S.C.M.A. 371, 20 C.M.A. 87 (1955). *Cf. United States v. Mack,* 9 M.J. 300, 317 (C.M.A.1980). The principal opinion acknowledges that post–trial misconduct may be used to vacate a suspended sentence, even if the misconduct occurred prior to the suspension action. *United States v. Williams,* 21 U.S.C.M.A. 292, 45 C.M.R. 66 (1972). In *United States v. Lallande,* 22 U.S.C.M.A. 170, 173, 46 C.M.R. 170, 173 (1973), the Court upheld provisions in a pretrial agreement which imposed various conditions of probation; it observed that the accused surrendered no "constitutional right that could affect his guilt or the legality of his sentence." In the absence of a pretrial agreement, the convening authority can consider post–trial misconduct. Such misconduct might tend to induce the convening authority to approve the adjudged sentence or a more severe part of it than that provided in a plea agreement, which requires good conduct by

---

3. In *United States v. Cox,* 22 U.S.C.M.A. 69, 46 C.M.R. 69 (1972), the Court did not resolve the issue of whether a hearing was a prerequisite for invoking a good–conduct provision because no such provision was set forth in the agreement in that case.

4. *United States v. Bigler,* 50 C.M.R. 818 (N.C. M.R.1975); *United States v. Nolan,* 50 C.M.R. 360 (N.C.M.R.1975); *United States v. May,* 49 C.M.R. 863 (N.C.M.R.1974).

the accused, but public policy does not proscribe consideration of post–conviction misconduct.

Turning to the majority's analogy of this plea provision to the proceedings for vacation of a suspended sentence under Article 72, it should be first noted that the article applies only to certain kinds of sentence. Beyond that, the analogy disregards the inchoate nature of a sentence prior to action by the convening authority. He may, as noted earlier, consider numerous matters, including post–trial misconduct, in determining what sentence to approve. In my opinion, the analogy is unrealistic and undefendable in law, and *Goode* properly rejected it when it was initially presented to the court.

As to the lack of clarity that the majority now perceive in the provision, I observe first that the accused, his lawyer, and the trial judge had no trouble understanding its language and the consequence of a violation of it by accused. During the providency inquiry, the judge asked the appellant if he understood the terms of the provision, and appellant answered in the affirmative. Assuredly, the reference to the Uniform Code is not vague as the obvious import is inclusion of the punitive provisions of the Code. *See* Article 137, UCMJ, 10 U.S.C. § 937. I see no need for an enumeration of every offense proscribed by the Code. Indeed, in *Lallande*, the Court upheld provisions in a pretrial agreement which included the following conditions:

3. conducts himself in all respects as a reputable and law–abiding citizen;

4. does not associate with any known users of, or traffickers in, dangerous drugs or narcotics, or marijuana . . . .

*Id.* at 173, 46 C.M.R. at 173. As to the procedures for the enforcement of the provision, they need not, in my opinion, be delineated in the plea agreement. They were established by the Court in *Goode* and appellant is entitled to them as a matter of law, not agreement.

I would affirm the decision of the United States Army Court of Military Review.