UNITED STATES

v.

**Jeffery A. HOLSTLAW, 329 64 9395, Lance Corporal (E–3), U.S. Marine Corps.**

**NMCM 94 00842.**

U.S. Navy–Marine Corps Court of Criminal Appeals.

Sentence Adjudged 12 Feb. 1992.

Decided 10 Nov. 1994.

LT Alan D. Titus, JAGC, USNR, Appellate Defense Counsel.

LT R.W. Sardegna, JAGC, USNR, Appellate Government Counsel.

Before ORR and REED, Senior Judges, and KEATING, J.

ORR, Senior Judge:

This case was tried on 12 February 1992, but more than 2 years elapsed before it was acted upon. By that time, the officer who had originally convened the court-martial had been relieved, and his command no longer existed. Nothing in the conduct of the trial or the preparation of the record would appear to justify that delay because the appellant pled guilty pursuant to the terms of a pretrial agreement, the record of trial was less than 50 pages in length, and the military judge authenticated the record less than 6 weeks after the trial was concluded. Nevertheless, this delay may have only been a contributing factor. The primary problems concern the absence of any record of a proceeding that appears to have been held to consider whether the appellant had complied with the terms of a pretrial agreement and whether the appellant was thereby required to serve more of the adjudged sentence to confinement than the agreement permitted.

Consistent with his pleas, the appellant was convicted of 19 separate offenses: (1), unlawfully entering another marine's barracks room with the intent to steal; (2), attempting to steal a car stereo from that other marine; (3), stealing four checks from a second marine; (4)–(7), forging those four checks, totaling $600.00, at four separate times; (8)–(16), uttering ten checks, totaling $569.05, with the intent to defraud; and (17)–(19), dishonorably failing to maintain sufficient funds in the issuance of three checks totaling $314.50. These offenses were, respectively, violations of Articles 130, 80, 121, 123, 123a, and 134, Uniform Code of Military Justice [UCMJ], 10 U.S.C. §§ 930, 880, 921, 923, 923a, 934. The appellant was sentenced by the military judge to confinement for 5 months, forfeiture of $500.00 pay per month for 5 months, reduction to pay grade E–1, and a bad-conduct discharge.

When the substitute convening authority (a successor in command of a unit reconstituted from the unit the appellant was assigned to at the time of trial) acted, he approved the sentence as adjudged but suspended the execution of the bad-conduct discharge for 12 months from the date of the action. The terms of the pretrial agreement, however, required that, if a punitive discharge was awarded, any confinement adjudged in excess of 60 days would be suspended for 12 months from the date of the action. A punitive discharge could be approved if adjudged.

The pretrial agreement also contained a paragraph in which the appellant agreed to provide full restitution by 1 April 1992 for the amounts appearing on the checks written in 17 of the offenses listed on the charge sheet. In that same paragraph, the appellant acknowledged that his failure to make restitution as agreed "may cause the convening authority to vacate any portion of my sentence suspended pursuant to the maximum sentence appendix to this agreement." Appellate Exhibit I, ¶ 15 at 3. In a separate paragraph, the appellant also acknowledged his understanding that any act of misconduct constituting an offense under the UCMJ after the agreement was signed could release the convening authority from the limitations of the agreement. *Id.*, ¶ 12 at 2.

From evidence recently submitted to us in response to our order, referred to below, it appears that the appellant served the 60 days of confinement required under the terms of

the agreement immediately after trial and he was released from the brig on 1 April 1992, shortly after the record of trial was authenticated. Sixteen months then elapsed before the staff judge advocate [SJA] made his recommendation for the convening authority on 26 July 1993. What happened to the appellant during that 16–month period is somewhat uncertain.

The SJA advised the convening authority (a) that the appellant had made no attempt to pay restitution by the 1 April 1992 date specified in the pretrial agreement,[1] (b) that the terms of the agreement have become "null and void," and (c) that the appellant would be confined to serve the remaining portion of his sentence as soon as the convening authority acted to approve the sentence. The SJA in this case was actually the staff judge advocate for the officer exercising general court-martial jurisdiction over the convening authority and the appellant.

On 4 October 1993, the trial defense counsel submitted a combined response to the SJA's recommendation and clemency request, in which he complained, in essence, that the recommendation ignored the fact that the appellant had already been required to serve the bulk of the "suspended confinement" and that the record of trial was not complete because a record of the vacation proceeding was not attached to the record of trial. Counsel also stated that (a) the officer who had convened the court-martial had held a vacation proceeding on 17 July 1992 to consider the appellant's failure to make restitution and a 21–day unauthorized absence, and (b) based upon that hearing, that officer had "vacated 60 days of suspended confinement which ... [the appellant] subsequently served." From this premise, the trial defense counsel argued that, since the appellant had committed no subsequent acts of miscon-

duct, he should not be further punished. This information was subsequently recounted in an affidavit from the trial defense counsel on 13 December 1993, which is attached to the counsel's 12 December 1993 addendum to his initial clemency request. In that addendum, the trial defense counsel also complained about the 22–month delay already encountered in the post-trial review of the appellant's court-martial.

Almost 2 months later, on 3 February 1994, the SJA issued an addendum to his initial recommendation. Concerning his earlier conclusion that the pretrial agreement was null and void, the SJA stated that "[t]his office was *not* notified of any vacation hearing," and based on other information he had obtained, he concluded that the appellant "has served all awarded confinement." The SJA then recommended that the substitute convening authority approve the sentence as adjudged.

Based upon this state of the record, we ordered the Government (a) to identify all incarceration and release dates of the appellant's actual service of his sentence to confinement; (b) to produce any available evidence of any hearing or other fact-finding procedure to determine whether the appellant had made restitution as promised in the pretrial agreement; and, (c) to produce information as to whether the appellant is still a member of the U.S. Marine Corps on active duty and, if so, when he reenlisted and for what period. The last request was based on the anomaly presented by the fact that the appellant's enlistment, as reflected in the record of trial, should have expired in 1992, and the substitute convening authority suspending a punitive discharge in 1994 for a 12–month period beginning in that same year, 1994.

---

1. Inserted in the record of trial but not identified as an attachment to or enclosure of any official post-trial document is an undated and unsigned memorandum listing the amounts from each specification, a total of $1,483.55, and a series of dates and corresponding telephone calls and other actions purporting to ascertain that the appellant had made only partial restitution (less than 10 per cent of the amount owed) and that the appellant was receiving full pay. In an analo-

gous context, albeit addressing misconduct, former Chief Judge Everett stated that "it seems unlikely that, as to the existence of post-trial misconduct, the appellant intended to leave the issue for resolution by the *ipse dixit* of the staff judge advocate or the convening authority." *United States v. Dawson*, 10 M.J. 142, 151 (C.M.A. 1981) (Everett, C.J., concurring in the result). From what is available to us in this record, it appears that some unidentified clerk

As part of that same order, we asked the appellant to file a brief on the following specified issue once the Government had provided the requested information:

DID THE CONVENING AUTHORITY ERR IN ORDERING THE APPELLANT'S SENTENCE TO CONFINEMENT EXECUTED AS ADJUDGED IN APPARENT RELIANCE UPON THE STAFF JUDGE ADVOCATE'S ADVICE THAT THE PRETRIAL AGREEMENT WAS NULL AND VOID BECAUSE THE APPELLANT HAD FAILED TO MAKE POST–TRIAL RESTITUTION AS PROMISED IN THE AGREEMENT? *See, e.g., United States v. Dawson,*[2] 10 M.J. 142 (C.M.A. 1981); Rule for Courts–Martial 705(c)(1)(B).

The Government was unsuccessful in finding any evidence of a hearing or other proceeding to determine whether the appellant had made restitution, and the base brig apparently had no record of the appellant's incarceration other than for the 6 weeks or so immediately after trial. A copy of a release order shows that the appellant was released from confinement on 1 April 1992. Although the Government argues in its brief on the specified issue that the appellant served no more confinement than the pretrial agreement provided for, the document the Government provided concerning the question of the appellant's current active duty status provides a rather convincing clue to the contrary.

The appellant's Certificate of Release or Discharge From Active Duty (DD Form 214) indicates that he was released from active duty to the Inactive Ready Reserves on 5 April 1994 with an honorable discharge. Three periods of "lost-time" are listed in the last block at the bottom of the DD Form 214, indicating the number of days attributable to those three periods were not used in calculating the appellant's active duty service. Such "lost-time" may include periods of unauthorized absence and of confinement. Although the basis for determining those periods is not reflected on the form, of the three periods listed:

—one period (920213–920401) corresponds to the appellant's service of confinement immediately following the date of trial;

—another period (920501–920521) appears to be the 21–day unauthorized absence that appellant's trial defense counsel referred to in his clemency petition and which he said was considered at the 17 July 1992 hearing; and,

—a third period (920724–920922) corresponds with the trial defense counsel's statement in his affidavit, that following the 17 July 1992 hearing, the convening authority ordered the appellant to serve all but 30 days of the remaining sentence to confinement but granted the appellant a deferment for 1 week.

Based on this information from the appellant's DD Form 214, the trial defense counsel's affidavit, and the SJA's concession, albeit somewhat inaccurate, that the appellant had served all of his sentence to confinement, we find that the appellant was required to serve approximately 2 months more of his sentence to confinement beyond the 60 days specified in the pretrial agreement. Based upon the trial defense counsel's affidavit, we also find that a hearing was held by the officer who convened this court-martial to consider the appellant's post-trial misconduct and to determine whether or not the appellant had made restitution. It appears, however, that no record of the hearing can be found, and it clearly is not attached to the record of trial.

█ At the risk of stating obvious dicta in a case that is in such disarray, we make several observations. First, any condition in a pretrial agreement that requires an accused to perform some affirmative act posttrial is potentially unenforceable unless it includes a mechanism that meets minimal due process requirements for determining whether the accused has failed to perform. *See Dawson,* 10 M.J. at 151 (Everett, C.J., concurring in the result). In this regard, R.C.M. 705 states: "A term or condition in a pretrial agreement shall not be enforced if it deprives the accused of ... the right to due process...." R.C.M. 705(c)(1)(B). Second,

attempted to resolve the issue whether the appellant made restitution.

**2.** In our order we incorrectly identified the case as *United States v. Davis.*

if such a post-trial condition requires the accused to expend money, the provision may also require consideration of the accused's total financial status in determining whether the terms of the agreement have been violated. *See Spriggs v. United States*, 40 M.J. 158, 164 (C.M.A.1994) (Cox, J., concurring).

 These concerns notwithstanding, it is clear from the pretrial agreement that the failure to make restitution was to be treated as a matter that could cause vacation of any suspended portion of the appellant's sentence. No other provision was made for addressing that question, and the military judge limited his discussion with the appellant about the restitution provision to that consequence. Record at 36. Contrary to the SJA's advice to the substitute convening authority, there was nothing in the agreement to indicate that failure to make restitution abrogated the agreement, and of the four events listed in the pretrial agreement that could have caused the agreement to become null and void, failure to make restitution was *not* one of them. Appellate Exhibit I, ¶ 11 at 2; Record at 34–35. Consequently, the convening authority was not at liberty to "release himself from the agreement" as the trial defense counsel described the convening authority's decision in counsel's affidavit.

 By the terms of the agreement, any hearing to determine whether the appellant had complied with the requirement to make restitution should have been part of the vacation process established by Article 72, UCMJ, 10 U.S.C. § 872, and R.C.M. 1109. In addition, the record of any such proceeding held in connection with the vacation of a suspension must be attached to the record of trial, as required by R.C.M. 1103(b)(3)(N) and (c)(1). The Government is unable to produce any record of the hearing in this case, however, and without that record, we have no way of ensuring that the hearing was properly conducted in accordance with R.C.M. 1109 or any other requirements of the law. Based upon this state of the record, we conclude that the appellant was improperly compelled to serve confinement beyond that specified in the terms of his pretrial agreement.

Our options concerning possible relief to the appellant for being illegally required to serve an additional 2 months of confinement, however, are few. The appellant's release from active duty has terminated his status as a person subject to military jurisdiction, *cf.* UCMJ, art. 2(a)(3), 10 U.S.C. § 802(a)(3), and the suspended bad-conduct discharge was automatically remitted upon his release from active duty, *see* R.C.M. 1108(e).

Nevertheless, we affirm the findings of guilty. Having reassessed the sentence in accordance with the principles established by *United States v. Jones*, 39 M.J. 315 (C.M.A. 1994), *United States v. Peoples*, 29 M.J. 426 (C.M.A.1990), and *United States v. Sales*, 22 M.J. 305 (C.M.A.1986), we affirm only so much of the sentence as provides for no punishment. All rights, privileges, and property of which the appellant may have been deprived by virtue of a sentence in excess of that affirmed herein will be restored.

Senior Judge REED and Judge KEATING concur.