UNITED STATES, Appellant

v.

Jerry L. SMITH, Private First Class
U.S. Marine Corps, Appellee.

No. 96–5007.
Crim.App. No. 95 1337.

U.S. Court of Appeals for
the Armed Forces.

Argued Jan. 8, 1997.

Decided July 7, 1997.

For the Accused: *Lieutenant John J. Luke*, JAGC, USNR (argued); *Lieutenant Evelio K. Rubiella*, JAGC, USNR.

For the United States: *Captain Daren K. Margolin*, USMC (argued); *Colonel Charles Wm. Dorman*, USMC (on brief).

*Opinion of the Court*

CRAWFORD, Judge:

Pursuant to his pleas, the accused was convicted by a military judge sitting alone as a special court-martial at Camp Foster, Okinawa, Japan, of absence without leave (3 specifications), missing movement, failure to obey a lawful order, and wrongful appropriation of an automobile, in violation of Articles 86, 87, 92, and 121, Uniform Code of Military Justice, 10 USC §§ 886, 887, 892, and 921, respectively. He was sentenced to a bad-conduct discharge, 120 days' confinement, partial forfeitures, and reduction to the lowest enlisted grade. The convening authority approved the sentence but suspended confinement in excess of 80 days for a period of 12 months. The Court of Criminal Appeals set aside the bad-conduct discharge but otherwise approved the sentence. The Judge Advocate General of the Navy certified the following issues to this Court:

I

WHETHER THE NAVY–MARINE CORPS COURT OF CRIMINAL APPEALS ERRED WHEN IT HELD THAT THE CONVENING AUTHORITY WAS REQUIRED TO FORWARD HIS REPORT OF PROCEEDINGS TO THE OFFICER EXERCISING GENERAL COURT–MARTIAL JURISDICTION AFTER HE CONDUCTED A POST-TRIAL MISCONDUCT HEARING PRIOR TO HIS ACTION.

II

WHETHER THE CONVENING AUTHORITY'S WRITTEN STATEMENTS—THE REPORT OF PROCEEDINGS AND THE CONVENING AUTHORITY'S ACTION—WERE SUFFICIENT TO ESTABLISH THAT [THE ACCUSED] COMMITTED THE POST-TRIAL MISCONDUCT IN VIOLATION OF THE TERMS OF HIS PRETRIAL AGREEMENT.

We hold that the Court of Criminal Appeals was correct when it held that the special court-martial convening authority (SCMCA) was required to forward to the general court-martial convening authority (GCMCA) the report of proceedings concerning the accused's alleged post-trial misconduct so that the GCMCA could determine whether this alleged misconduct took place and, if so, whether it violated the terms of the pretrial agreement.

FACTS

The accused's guilty pleas were pursuant to a pretrial agreement. Paragraph 14 of that agreement provides as follows:

That it is expressly understood that the accused will not commit any act of misconduct chargeable under the Uniform Code of Military Justice between the date both parties sign this agreement and the date of the convening authority's action. Any act of pretrial misconduct committed by the accused after both parties sign this agreement will be grounds for the convening authority to withdraw from this agreement. Should the accused commit any post-trial misconduct before the convening authority takes action on the record of trial, such misconduct may release the convening authority from the sentencing limitations appendix to this agreement. Should the accused commit any post-trial misconduct after the convening authority takes action on the record of trial, such misconduct may be used as a basis for the convening authority to vacate any portion of the sentence suspended pursuant to the sentencing limitations appendix to this agreement. The hearing provisions of RCM 1109 apply to any action contemplated as a result of post-trial misconduct. Proof by a preponderance of the evidence shall be the government's burden of proof at any such hearing.

During the guilty-plea inquiry, the judge explained this paragraph to the accused, who asserted that he understood the following:

So this misconduct clause says that if for some reason you commit an act of misconduct between the date 25th of January and the date in the future that the convening authority takes action that could serve as a basis for the convening authority to withdraw from this pretrial agreement.

* * *

Also any act of pretrial misconduct by you can serve as grounds for the convening authority to withdraw from this agreement. . . .

* * *

If you commit an act of misconduct after trial but before the convening authority's action, that misconduct can release the convening authority from the sentence-limitation portion of this agreement. . . .

Then the judge distinguished between pre-action and post-action misconduct. He stated:

Misconduct after the convening authority takes action could also be used as a basis for the convening authority to vacate any portion of the sentence suspended pursu-

ant to the sentence-limitation appendix to this agreement.

\* \* \*

The hearing provisions of Rules [sic] for Court–Martial 1109 apply to any action considered by the convening authority that can result in either withdrawing from this pretrial agreement or in vacating some suspended part of the sentence in this case as a result of your misconduct.

The accused again indicated that he understood.

The judge made no inquiry as to the provision that the Government had to prove the misconduct at such a hearing by a "preponderance of the evidence." The judge concluded by explaining that the accused would have "certain hearing rights" concerning any misconduct considered by the convening authority to withdraw from the pretrial agreement for an act of misconduct prior to action, as well as hearing rights for any misconduct after action considered to vacate the suspension. The accused indicated that he understood all of the above.

After the sentence was adjudged, the accused's confinement in excess of 80 days was deferred pursuant to the pretrial agreement. Subsequent to serving the non-deferred confinement, and while awaiting return to the United States from Okinawa, the accused became intoxicated and slashed his wrist approximately five times using plastic safety razors. He was unsuccessful in killing himself, and he was discovered and taken to the base hospital in Okinawa. When this information was reported to the SCMCA, he had not taken action on the case. Pursuant to his interpretation of the misconduct clause in the pretrial agreement, the SCMCA convened a "vacation of suspension of sentence" hearing in accordance with RCM 1109, Manual for Courts–Martial, United States (1995 ed.), and Article 72, UCMJ, 10 USC § 872.

The accused received proper notification and attended the hearing. He waived his right to have legal counsel. The SCMCA and four other members of his staff were present at the hearing. A summary and a formal report of proceedings were prepared,

and the SCMCA recommended that the suspension of the bad-conduct discharge be vacated.

This report did not indicate what, if any, standard was used by the SCMCA to determine whether the misconduct occurred. The pretrial agreement required a preponderance-of-the-evidence standard. Also, the report did not, as required, set forth "the reasons for the decision, and the information relied on." RCM 1109(c)(4)(C).

Prior to the SCMCA action, the staff judge advocate (SJA)'s recommendation referenced the misconduct clause in the pretrial agreement. While the SJA found that the procedures which would be used to "release" the SCMCA from the terms of the agreement were "not clear," he advised the SCMCA that the procedures of RCM 1109 applied and stated as follows:

RCM 1109 requires, however, that the results of the vacation hearing be forwarded to the general court-martial convening authority for a decision on vacating the sentence. Since Private First Class Smith's sentence has not been approved, there is no sentence to vacate [sic]. Accordingly, it is my view that the proper procedure contemplated by the parties was that the hearing requirements of RCM 1109 would be used by the convening authority and be utilized in determining whether post-trial misconduct occurred. I note that you conducted a hearing on 17 March 1995, utilizing forms and procedures set forth in RCM 1109, and that you recommended that the bad-conduct discharge be vacated [sic]. If you believe by a preponderance of the evidence that Private First Class Smith *committed post trial misconduct of disorderly conduct on 8 March 195[sic]* as indicated in your vacation hearing, then in my opinion you are no longer bound by the terms of the pretrial agreement, and may approve the sentence as adjudged.

Recommendation at 3–4.

The SCMCA chose to approve the sentence but suspend confinement in excess of 80 days for a period of 12 months. He did not, however, suspend execution of the bad-conduct discharge. Consequently, he did not

forward the report of the misconduct proceedings to the GCMCA for action.

Before the Court of Criminal Appeals, the accused argued that the SCMCA'S failure to suspend the bad-conduct discharge violated the pretrial agreement. That court agreed on the ground that RCM 1109 and Article 72 had not been complied with since the SCMCA'S report was not sent to the GCMCA for vacation of the suspension. It found that

(1) the Report failed to indicate that the evidence was sufficient to establish a violation of the provisions of the pretrial agreement; and (2) the ... [GCMCA] did not review and act on the convening authority's recommendation in accordance with RCM 1109.

Unpub. op. at 4. For these reasons, it set aside the bad-conduct discharge because the time contemplated by the agreement for suspension had expired.

Appellate government counsel argue that it is legally impossible to vacate a suspension that has not yet become part of the final action approved by the convening authority, and that the misconduct clause in the pretrial agreement released the convening authority from the sentence limitations when the accused committed misconduct prior to the convening authority taking action. Government counsel argue that precedents of the court below have validated the post-trial misconduct clause in the pretrial agreement if:

(1) its terms are sufficiently clear and

(2) the accused is afforded his right to due process *through a hearing* before it is enforced.

Government Brief at 5.

The Government also asserts that Article 72 does not apply because it is impossible to vacate a suspension which has not been imposed and because Article 72 does not mention such a possibility. Hence, the Government concludes that, because no requirement existed in the pretrial agreement for the results of any vacation or any misconduct hearing to be forwarded to the GCMCA, and because this was expressly explained to the accused, the hearing conducted by the SCMCA with the accused present was suffi-

cient to satisfy due process rights and sustain the action of the SCMCA withdrawing from that part of the pretrial agreement which required him to suspend execution of the bad-conduct discharge.

Finally, government counsel contend that, even if we were to determine that RCM 1109 and Article 72 required that the report of the misconduct violation be forwarded to the GCMCA, the accused waived such a requirement by agreeing to the terms of the pretrial agreement.

Appellate defense counsel argues that the proper procedure to have been followed here, pursuant to the terms of the pretrial agreement, would have been for the SCMCA to forward to the GCMCA his findings and recommendation that execution of the suspension be vacated. The SCMCA would then take his action approving and suspending the confinement and the bad-conduct discharge, after which the GCMCA would vacate the suspension of both on the basis of the previously held hearing. Appellate defense counsel also asserts that, in order to provide the due process envisioned by RCM 1109 and Article 72, the misconduct hearing had to comply with the provisions of RCM 1109, regardless of whether the misconduct occurred prior to the convening authority action or afterwards. Defense Brief at 12.

As to the second issue, appellate defense counsel argues that the report of the SCMCA was insufficient because there was no specific finding that the accused committed the offenses by a preponderance of the evidence.

### DISCUSSION

■ Article 72 provides:

(a) Before the vacation of the suspension of a special court-martial sentence which as approved includes a bad-conduct discharge, or of any general court-martial sentence, the officer having special court-martial jurisdiction over the probationer shall hold a hearing on the alleged violation of probation. The probationer shall be represented at the hearing by counsel if he so desires.

(b) The record of the hearing and the recommendation of the officer having special court-martial jurisdiction shall be sent for action to the officer exercising general court-martial jurisdiction over the probationer. If he vacates the suspension, any unexecuted part of the sentence, except a dismissal shall be executed. . . .

RCM 1109(d)(1)(A) provides as follows:

*(d) Vacation of suspended general court-martial sentence or of a suspended special court-martial sentence including a bad-conduct discharge.*

*(1) Action by officer having special court-martial jurisdiction over probationer.*

(A) *In general.* Before vacation of the suspension of any general court-martial sentence, or of a special court-martial sentence which, as approved, includes a bad-conduct discharge, the officer having special court-martial jurisdiction over the probationer shall personally hold a hearing on the alleged violation of the conditions of suspension. If there is no officer having special court-martial jurisdiction over the accused, who is subordinate to the officer having general court-martial jurisdiction over the accused, the officer exercising general court-martial jurisdiction over the accused shall personally hold the hearing under subsection (d)(1) of this rule.

RCM 1109(c)(4)(A) provides that the accused shall be given notice of the time, place, and purpose of the hearing; the right to be present; the alleged violations of the conditions of suspension; the right to be represented by civilian or military counsel; as well as the opportunity to be heard and present witnesses and other evidence and to confront and cross-examine adverse witnesses.

RCM 1109(d)(1)(C) provides that "[t]he procedure for the vacation hearing shall follow that prescribed in RCM 405(g), (h)(1), and (i)." RCM 405(g)(1)(A) provides that "any witness whose testimony would be relevant to the investigation and not cumulative, shall be produced if reasonably available."

RCM 405(h)(1)(A) states: "All testimony shall be taken under oath, except that the accused may make an unsworn statement. The defense shall be given wide latitude in cross-examining witnesses."

RCM 1109(d)(1)(D) states: "The officer who conducts the vacation proceeding shall make a summarized record of the proceeding and forward the record and that officer's written recommendations concerning vacation to the officer exercising general court-martial jurisdiction over the probationer."

RCM 1109(d)(2)(A) provides:

The officer exercising general court-martial jurisdiction over the probationer shall, based upon the record produced by and the recommendation of the officer exercising special court-martial jurisdiction over the probationer, decide whether the probationer violated a condition of suspension, and, if so, whether to vacate the suspended sentence. If the officer exercising general court-martial jurisdiction decides to vacate, that officer shall prepare a written statement of the evidence relied on and the reasons for vacating.

RCM 705(c)(2)(D) provides that the following is a permissible term of the pretrial agreement:

A promise to conform the accused's conduct to certain conditions of probation before action by the convening authority as well as during any period of suspension of the sentence, provided that the requirements of RCM 1109 must be complied with before an alleged violation of such terms may relieve the convening authority of the obligation to fulfill the agreement[.]

RCM 405(g), (h), and (i) give the general format for a hearing conducted pursuant to Article 32, UCMJ, 10 USC § 832.

The pretrial agreement between the parties, Article 72, and RCM 1109 all provide for a two-step procedure, regardless of whether the misconduct is prior or subsequent to the convening authority action. The procedure is as follows: After the required hearing is conducted by the SCMCA, the record of the hearing "shall" be sent to the GCMCA. Thereafter, the GCMCA will examine the record prepared at the vacation proceeding

and decide what action to take. This second step is mandatory and represents a substantial right because the convening authority may for any reason or no reason at all decide not to vacate the agreed-upon suspension. Thus, because this second step did not take place, Certified Issue I is answered in the negative.

## ISSUE II

■ As to the second issue, we hold that the SCMCA's summary and formal report were insufficient to establish that the accused committed the post-trial misconduct alleged to have been a violation of the pretrial agreement. The only person with the power to determine whether there was post-trial misconduct in violation of the pretrial agreement was the GCMCA.

Because the time contemplated by the pretrial agreement for suspension of the execution of the bad-conduct discharge has expired, we agree with the conclusion of the court below.

The decision of the United States Navy–Marine Corps Court of Criminal Appeals setting aside the bad-conduct discharge is affirmed.

Chief Judge COX and Judge EFFRON concur.

GIERKE, Judge (concurring in part and in the result):

I agree with the majority's decision regarding Issue I and join in answering the first certified question in the negative. In my view, Issue II is rendered moot by our decision regarding Issue I. *See United States v. Clay*, 10 MJ 269 (CMA 1981). Accordingly, we need not decide whether the convening authority applied the correct standard to determine the sufficiency of the evidence of misconduct or made sufficient findings to support his action. I agree with the majority and the court below that no useful purpose will be served by remanding this case for a new convening authority's action, since the bad-conduct discharge was automatically remitted at the end of the period of suspension. Accordingly, I join the majority in affirming the decision of the court below.

SULLIVAN, Judge (concurring in part and dissenting in part):

There are two certified issues in this case. I agree with the majority's resolution of the first certified issue. The second issue becomes moot in light of this resolution of Issue I. The majority's suggestion of an answer to this mooted issue moves this Court past the line of judicial restraint that I refuse to cross. Judges should function as members of the judicial branch of government deciding issues necessary to resolve a case in controversy before them. Judges should not venture into deciding policy as if they were members of a congressional subcommittee or as if they were a group of assistant secretaries in an Executive department. The law must grow out of controversy, not out of advisory policy making.