Judge ERDMANN
delivered the opinion of the Court.
Molder Chief Petty Officer[1] (E-7) Teresa Miley entered guilty pleas and was convicted by a military judge of larceny and forgery in violation of Articles 121 and 123, Uniform Code of Military Justice [UCMJ], 10 U.S.C. §§ 921 and 923 (2000). She was sentenced by the military judge to a bad-conduct discharge, 105 days confinement and reduction to the lowest enlisted grade.
In accordance with the terms of a pretrial agreement, the convening authority suspended the bad-conduct discharge and any confinement in excess of 90 days for a period of 12 months. Approximately nine months into that period of suspended punishment, Miley provided a urine sample that tested positive for the presence of methamphetamine. In addition to imposing punishment on Miley under Article 15, UCMJ, 10 U.S.C. § 815 (2000) for wrongful drug use, her suspended sentence was vacated on the basis of the positive drug test.
The Navy-Marine Corps Court of Criminal Appeals affirmed the findings of guilty and the sentence, including the vacation of Miley’s suspended punishment. United States v. Miley, NMCM 9600822, 1998 WL 88143 (N.M.Ct.Crim.App. February 26, 1998). Miley filed an appeal with this Court and we granted review of her challenge to the vacation of the suspended sentence and specified an issue for review concerning the use of polygraph evidence as part of that vacation proceeding. United States v. Miley, 51 M.J. 232 (C.A.A.F.1999).
After noting that the record included a number of conflicting and incomplete affidavits regarding the vacation proceeding, we concluded that the record was not appropriate for appellate review. Id. at 233. Our disposition of the appeal provided the convening authority the option of either (1) conducting further proceedings under United States v. DuBay, 17 C.M.A. 147, 37 C.M.R. 411, 1967 WL 4276 (1967) or (2), if a DuBay proceeding was deemed impractical, ordering a new vacation proceeding. Id.
On remand, the convening authority chose to order a new vacation proceeding. At the conclusion of that proceeding, the convening authority again vacated Miley’s suspended sentence and her case was transmitted to the Court of Criminal Appeals for a second review under Article 66(c), UCMJ, 10 U.S.C. § 866(e) (2000).
The Court of Criminal Appeals once again affirmed the findings of guilt and the sentence, including the vacation of Miley’s sus *302 pended sentence. United States v. Miley, NMCM 9600822, 2002 WL 31341098 (N.M.Ct.Crim.App. October 11, 2002). In response to Miley’s second appeal to this Court, we granted review of the following Issue I and specified Issue II:
I. WHETHER THE LOWER COURT ERRED BY FINDING THAT THE VACATION HEARING OFFICER NEED NOT MAKE FINDINGS OF FACT AND PROVIDE A WRITTEN EVALUATION OF THE FACTS UPON WHICH SHE RELIED IN RECOMMENDING THAT THE SUSPENDED PORTION OF APPELLANT’S SENTENCE NOT BE VACATED WHERE THE GENERAL COURT-MARTIAL CONVENING AUTHORITY, WHO PROVIDED A WRITTEN EVALUATION OF THE EVIDENCE HE RELIED ON, DISAGREED WITH THE HEARING OFFICER’S RECOMMENDATION AND VACATED A PORTION OF THE SUSPENDED SENTENCE.
II. WHETHER THE LOWER COURT ERRED BY FINDING THAT THE EVIDENCE PRESENTED AT THE VACATION HEARING WAS SUFFICIENT TO SUPPORT A FINDING OF MISCONDUCT WHERE THE SPCMCA APPLIED A PROBABLE CAUSE EVI-DENTIARY STANDARD AND WHERE IT IS UNCLEAR WHAT STANDARD WAS APPLIED BY THE GCMCA.
We hold that the vacation hearing officer’s decision and recommendation to the general court-martial convening authority did not comply with the requirements of Rule for Courts-Martial 1109 [R.C.M.] and, as a consequence, that the Court of Criminal Appeals erred in affirming Miley’s findings and sentence. In light of the disposition of Issue I, we do not reach Issue II.

BACKGROUND

The convening authority opted to conduct a second vacation proceeding rather than conduct a DuBay inquiry concerning alleged deficiencies in the first vacation proceeding. The “vacation hearing officer”, i.e., the special court-martial convening authority (SPCMCA), held a hearing in March of 2000 in accordance with R.C.M. 1109(d)(1)(A) for the purpose of determining whether Miley had violated the conditions of her suspension.
Miley’s defense to the alleged wrongful methamphetamine use was a claim of innocent ingestion, as it had been at the first vacation hearing. She asserted that her daughter’s boyfriend had stored methamphetamine in some Tylenol gel capsules that he had inadvertently left in their household. According to Miley, neither she nor her daughter was aware of the boyfriend’s actions and as a result her daughter had unwittingly given her two of the methamphetamine-laced Tylenol gel capsules for a headache. Miley also testified that she had become sick and began vomiting after taking the Tylenol gel capsules.
Although they did not testify in person at the second vacation proceeding, the testimony given by Miley’s daughter and the ex-boyfriend in the Article 15 proceeding was considered by the SPCMCA. That testimony supported Miley’s innocent ingestion claim, with the ex-boyfriend asserting that he had in fact lost his Tylenol gel capsules and believed that they had fallen from his pants pockets while changing clothes at the Miley residence.
Miley was the only witness to provide testimony at her vacation hearing. The SPCMCA also considered several items of documentary evidence, including the terms of the pretrial agreement, the drug laboratory report, and the record of the Article 15 proceedings. At the conclusion of the hearing, the SPCMCA indicated that she would “render [her] decision as to whether there is probable cause to believe that the conditions of [Miley’s] suspension have been violated; and if so, whether to vacate the suspended sentence____”
After adjourning to consider the matter, the SPCMCA called the hearing back to order and issued the following ruling:
I have carefully looked over your issue. The bottom line is that I am not going to vacate your suspended sentence. That is the first thing, not because I don’t think you’re guilty, but because three years ago, *303 the Navy should have done it correctly. Therefore the Federal Government and U.S. Navy should be held responsible for this. You should not have to come back three years later because the Navy didn’t do its’ [sic] job correctly the first time. I am not positive whether I buy your story or not. I have been here nine months at [Transient Personnel Unit], and I don’t buy many stories. Whether you knowingly ingested it or not, I don’t know. I believe you showed poor judgment in having an individual of that character in your house with your 17-year old daughter. I certainly hope that over the last three years you have seen the light, changed your behavior, and are now making a positive contribution to society.
I find that there was not probable cause to believe that the conditions of your suspension have been violated.
My recommendation is not to vacate the suspended sentence.
The Hearing Officer then completed the appropriate portions of DD Form 455 “Report of Proceedings”[2] and formally recommended that the suspension of the sentence not be vacated. This DD Form 455 and a Record of Vacation Hearing were forwarded to the General Court-Martial Convening Authority (GCMCA) for review and further action.
The GCMCA rejected the SPCMCA’s recommendation that the suspended sentence not be vacated and provided the following summary of the evidence he relied upon:
1. In determining whether MLC Miley’s suspended sentence should be vacated, I considered: (a) her positive urinalysis of 3 June 96 (as evidenced by Navy Drug Screening laboratory ltr 5355 Ser 41/C1439 of 24 Nov 99 w/enclosures), (b) her claim of innocent ingestion, as set forth in the transcript of her testimony at the 20 March 2000 vacation hearing as well as her NJP appeal package of 18 July 96, which includes statements by [her daughter and her daughter’s ex-boyfriend], (c) her eourtmartial conviction for larceny and forgery, and (d) the terms of MLC Miley’s pretrial agreement.
2. On the advice of my Staff Judge Advocate, I did not consider any information about a polygraph examination to which MLC Miley may or may not have submitted; nor did I consider any of the information contained in exhibits (2) and (9) of the recorder’s document package. I note MLC Miley’s counsel objected to these documents at the hearing and the hearing officer did not accept these documents for consideration.
The GCMCA then went on to provide the following reasons for his decision:
1. I find MLC Miley violated the terms of her pretrial agreement when, during the period of her suspended sentence, she knowingly used methamphetamine in violation of Article 112A [sic], UCMJ.
2. I do not believe MLC Miley’s claim of innocent ingestion. The improbability of her story, in addition to her court-martial conviction for offenses involving dishonesty and deception, gives her little credibility. Further, the statement of [her daughter’s ex-boyfriend], an admitted drug-abuser, is unbelievable and offers little to support her claim. I am convinced MLC Miley knowingly used methamphetamine and, thus, violated the terms of her pretrial agreement.
The GCMCA then vacated the suspension of Miley’s bad-conduct discharge and her reduction to the lowest enlisted grade.

DISCUSSION

This appeal centers on the respective roles of the SPCMCA and the GCMCA in the process for vacating a suspended sentence of a general court-martial. That process is governed by Article 72, UCMJ, 10 U.S.C. § 872 (2000) and R.C.M. 1109, both of which require that the SPCMCA (1) conduct a hearing on the alleged violation of the conditions of suspension and (2) transmit a record of that hearing and his/her recommendation to *304 the GCMCA. See Article 72(a)-(b); R.C.M. 1109(d)(1)(A), (D).
Upon receipt of the package, the GCMCA is required to review the record and the SPCMCA’s recommendation and decide whether the probationer violated a condition of suspension. If so, the GCMCA must decide whether to vacate the suspended sentence. R.C.M. 1109(d)(2)(A). If a decision is made to vacate the suspended sentence, the GCMCA is required to prepare a written statement of the evidence relied on and the reasons for that decision. Id.
The SPCMCA conducted the required hearing and she sent a record of that hearing to the GCMCA along with DD Form 455. The GCMCA rejected the SPCMCA’s recommendation and provided his required “written statement of the evidence relied on and the reasons for vacating the suspended sentence.” R.C.M. 1109(d)(2)(A).
Miley contends that the process followed here was defective, however, because the SPCMCA never resolved the factual questions underlying the attempt to vacate her suspended sentence and made no determination as to whether those facts, as found, warranted vacation of the suspended sentence. While the SPCMCA’s recommendation was favorable to Miley, i.e., to not vacate the suspension, it was not based on any factual determination that Miley had not violated the terms of her suspension. Rather, the SPCMCA’s recommendation appears to have been based, as the Court of Criminal Appeals put it, “on equitable grounds.” Miley, NMCM 9600822, 2002 WL 31341098 at *4 (N.M.Ct.Crim.App. October 11, 2002).
The Court of Criminal Appeals held that the SPCMCA as “the hearing officer [was] obligated to provide an evaluation of any contested facts and a determination of whether the facts as found warrant vacation.” Id. The court below viewed that “obligation” as arising under its earlier decision in United States v. Dupuis, 10 M.J. 650, 653 (N.C.M.R.1980). The Dupuis decision, in turn, characterized the SPCMCA’s obligation to evaluate and determine contested facts as “constitutional due process requirements” flowing from our decision in United States v. Bingham, 3 M.J. 119 (C.M.A.1977). See Dupuis, 10 M.J. at 653 (characterizing Bingham as addressing constitutional due process).
Although we need not decide today whether this is a requirement of constitutional dimension, we agree with the Court of Criminal Appeals that the SPCMCA is required to provide an evaluation of any contested facts and a determination of whether the facts, as found, warrant vacation of the suspension. That obligation arises as a requirement under R.C.M. 1109(d)(1).
The rule requires the SPCMCA to “personally hold a hearing” on the alleged violation of the conditions of suspension, make a summarized record of that hearing and to transmit both the record and a “written recommendation concerning vacation” to the GCMCA. R.C.M. 1109(d)(1)(A), (D). The SPCMCA acts as the GCMCA’s eyes and ears during this process and is the only official to personally observe the demeanor of the witnesses — in this case Miley.
The requirements set forth in R.C.M. 1109(d)(1) would have little meaning if the SPCMCA was not required to resolve any contested evidentiary questions and provide the basis for that resolution to the GCMCA. As Senior Judge Everett has reminded us in the past, “ ‘[a]lways salt down the facts first: the law will keep.’ ... In the very nature of things, it is impossible for a court to enter a valid judgment declaring the rights of parties to litigation until the facts on which those rights depend have been ‘salted down’ in a manner sanctioned by law.” United States v. Haney, 45 M.J. 447, 448 (C.A.A.F.1996)(quoting then North Carolina Supreme Court Justice Sam Ervin in Erickson v. Starling, 235 N.C. 643, 71 S.E.2d 384, 395-96 (1952)). To the extent that the hearing contemplated by R.C.M. 1109(d)(1) is the only “hearing” conducted during the vacation process, it makes little sense to conclude that the rule does not require that any facts actually be “salted down” at the hearing.
Accordingly, the “written recommendation” required of the SPCMCA under R.C.M. 1109(d)(1)(D) must include both an evaluation of the contested facts and a deter- *305 initiation of whether the facts warrant vacation. The SPCMCA’s comments at the conclusion of Miley’s hearing that “I am not positive whether I buy your story or not” and “[w]hether you knowingly ingested it or not, I don’t know” fall short of fulfilling the requirements of R.C.M. 1109(d)(1)(D). As the Court of Criminal Appeals noted, she “failed to evaluate the facts” and chose to make a recommendation based on “equitable grounds.” Miley at *4. We must now address the consequences, if any, that flow from that error.
Citing its decision in Dupuis, the Court of Criminal Appeals concluded that “[i]f the hearing officer fails to provide the required evaluation of facts, that defect may be cured by the GCMCA.” Id. In Dupuis, as in the present case, the SPCMCA provided “no evaluation” of the evidence even though the facts were contested. Dupuis, 10 M.J. at 653. The Court of Military Review observed that it was “preferable” that such an evaluation be provided by the SPCMCA, but concluded that the “failure to do so” was not “fatal” if the GCMCA “remedies the defect by making the necessary evaluation and findings of fact.” Id. at 653-54.
We disagree. While there may well be forms of error committed by an SPCMCA in fulfilling his or her responsibilities under R.C.M. 1109(d)(1) that a GCMCA’s compliance with R.C.M. 1109(d)(2) might “remedy,” a failure to evaluate and determine the contested facts is not one of them. While the GCMCA was “convinced that Miley knowingly used methamphetamine and, thus, violated the terms of her pretrial agreement” none of those facts were discussed or found by the SPCMCA, the official who was in the best position to evaluate the demeanor and credibility of the only live witness.
The “record produced by and the recommendation of’ the SPCMCA is the basis upon which the GCMCA must “decide whether the probationer violated a condition of suspension, and, if so, decide whether to vacate the suspended sentence.” R.C.M. 1109(d)(2)(A). As we have recognized in the past, the GCMCA’s review of that record and his or - her ultimate decision “represents a substantial right because the [GCMCA] may for any reason or no reason at all decide not to vacate the agreed-upon suspension.” United States v. Smith, 46 M.J. 263, 268 (C.A.A.F.1997). However, without any resolution of disputed facts and/or determinations of witness credibility by the SPCMCA, the GCMCA is left with an insufficient record upon which to base his or her ultimate decision.
The GCMCA correctly set forth his decision and the evidence that he relied upon in making that decision, however the record that he relied upon was devoid of an integral step — the resolution of critical fact questions by the SPCMCA. Miley had a substantial right to that step in the process and we will not speculate as to what decision the GCMCA may have made if the SPCMCA had properly evaluated and resolved the contested facts in the record. Cf. United States v. Chatman, 46 M.J. 321, 323-24 (C.A.A.F.1997)(refusing to speculate as to what the convening authority might have done if the post-trial review process had been conducted properly).

CONCLUSION

Accordingly, the decision of the United States Navy-Marine Corps Court of Criminal Appeals and the action of the general court-martial convening authority in vacating the suspension of the sentence are set aside. The record of trial is returned to the Judge Advocate General for remand to the general court-martial convening authority to determine whether further vacation proceedings are practicable. If deemed practicable, the proceedings shall be conducted in a manner consistent with this opinion. If deemed impracticable, the general court-martial convening authority shall enter a supplemental action in the record consistent with his or her obligations under the terms of the pretrial agreement. Thereafter, Articles 66 and 67, UCMJ, 10 U.S.C. §§ 866 and 867 (2000) will apply.

. Chief Petty Officer Miley’s Navy career field is that of a "Molder,” who is someone who operates all types of foundry equipment and makes molds and cores. U.S. Burean of Naval Personnel, U.S. Navy Interviewer’s Classification Guide (NAVPERS 16701) (1943).

. The full title of the Form is "Report of Proceedings to Vacate Suspension of a General Court-Martial Sentence or of a Special Court-Martial Sentence Including a Bad-Conduct Discharge under Article 72, UCMJ, and R.C.M. 1109."