**UNITED STATES**

v.

**Airman First Class Amy R. SHOOK, United States Air Force.**

**ACM 37593.**

U.S. Air Force Court of Criminal Appeals.

Sentence adjudged 14 Oct. 2009.

14 July 2011.

Appellate Counsel for the Appellant: Colonel James B. Roan; Lieutenant Colonel Gail E. Crawford; Lieutenant Colonel Darrin K. Johns; and Major Reggie D. Yager.

Appellate Counsel for the United States: Colonel Don M. Christensen; Major Naomi N. Porterfield; Captain Joseph Kubler; and Gerald R. Bruce, Esquire.

Before BRAND, ORR, and WEISS, Appellate Military Judges.

## OPINION OF THE COURT

WEISS, Judge:

In accordance with her pleas of guilty to one charge and seven specifications of wrongful distribution of oxycodone, methadone and methamphetamine; and wrongful use of oxycodone, methadone, methamphetamine and heroin, in violation of Article 112a, UCMJ, 10 U.S.C. § 912a, a general court-martial composed of officer members sentenced the appellant to a bad-conduct discharge, confinement for 3 years, a fine of $1,100.00, and reduction to E–1. Despite a pretrial agreement that capped confinement at no more than 18 months, the convening authority approved the sentence as adjudged based on the appellant's violation of the post-trial misconduct provision in her pretrial agreement. The question presented on appeal is whether the misconduct provision is valid, and if so, were proper procedures followed so as to permit the convening authority to cancel the sentence limitation in the pretrial agreement. Finding prejudicial error, we grant the appellant relief.

### Background

The appellant and the general court-martial convening authority (GCMCA) entered into a pretrial agreement in which the appellant offered to plead guilty to the charge and specifications in exchange for the convening authority's promise to approve no confinement in excess of 18 months. There were no other limitations on the sentence. As a condition of the pretrial agreement, the appellant agreed to cooperate with the Air Force Office of Special Investigations (AFOSI) regarding her knowledge of illegal drug activity involving other Air Force members. The pretrial agreement also contained the following post-trial misconduct provision at paragraph 6:

> I understand that the convening authority's obligation to approve a sentence no greater than that provided in Appendix A to this agreement may be cancelled after a hearing following the guidelines in RCM 1109(c)(4), if I commit any offense chargeable under the UCMJ between the announcement of sentence and the convening authority's approval of any sentence.

Prior to entering findings, the military judge conducted a providence inquiry of the appellant's guilty plea. He discussed the terms and conditions of the pretrial agreement with her, including the provisions concerning post-trial misconduct and future cooperation with the AFOSI. In accordance with her pleas, the military judge found the appellant guilty. Pursuant to the terms of the pretrial agreement and under a grant of testimonial immunity, AFOSI agents interviewed the appellant on two separate occasions following the trial regarding her knowledge of other illegal drug activity. During these interviews, the AFOSI agents came to suspect the appellant of lying. They also believed the appellant asked her husband to delete text messages on her cell phone that she previously agreed to provide to them.

In response to allegations of the appellant's lack of cooperation and misconduct, the special court-martial convening authority (SPCMCA) notified the appellant that he intended to convene a hearing to determine whether she had violated the terms of her pretrial agreement. The SPCMCA appointed a senior reserve judge advocate to conduct the hearing using the procedural guidelines of Rule for Courts–Martial (R.C.M.) 1109(c)(4). Based on the evidence presented at the hearing, the hearing officer found that the appellant had violated the terms of her pretrial agreement by being untruthful to the AFOSI and by asking her husband to delete text messages. The hearing officer also found this same conduct constituted offenses chargeable as making false official statements and obstruction of justice in violation of Articles 107 and 134, UCMJ, 10 U.S.C. §§ 907, 934. The hearing officer forwarded his report to the SPCMCA for review. The SPCMCA recommended that the GCMCA cancel the sentence limitation in the appellant's pretrial agreement and approve the sentence as adjudged.

The Staff Judge Advocate's Recommendation (SJAR) to the GCMCA addressed, among other matters, the issue of whether the appellant failed to comply with the pretrial agreement. The SJAR described the circumstances of the appellant's post-trial misconduct as found during the hearing and

referenced paragraph 6 of the pretrial agreement. The staff judge advocate (SJA) advised:

> ... [T]here is credible evidence the Accused engaged in two specific instances of providing false official statements to AFOSI agents (Article 107, UCMJ), and one instance of obstruction of justice (or attempt) (Article 134, UCMJ [or Article 80, UCMJ]). A hearing was held on 13 Nov 09, following the guidelines of RCM 1109(c)(4). Based on the evidence adduced, the hearing officer concluded the Accused had engaged in these Code violations. . . . You are not bound by the conclusions of the hearing officer. However, if you conclude the Accused did commit an offense chargeable under the UCMJ after trial, you may choose to cancel the provisions of the pretrial agreement, and approve the entire or any part of the sentence adjudged.

The SJAR concluded: "I am also satisfied the Accused has failed to live up to her obligations under the pretrial agreement, thus freeing you from your commitment to curtail any approved confinement at 18 months." Despite the appellant's clemency submissions objecting to the post-trial misconduct hearing and her request that the convening authority honor the sentence limitation in the pretrial agreement, the GCMCA approved the entire adjudged sentence.

### Post-trial Misconduct Provisions in Pretrial Agreements

■ Interpretation of the provisions of a pretrial agreement and interpretation of the R.C.M. are questions of law that we review de novo. *United States v. Dean,* 67 M.J. 224, 227 (C.A.A.F.2009) (citing *United States v. Hunter,* 65 M.J. 399, 401 (C.A.A.F.2008)). The type of pretrial agreement provision of which the appellant complains is commonly used in military justice practice. Its use is even included as an optional provision in the sample pretrial agreement format in the Air Force Instruction (AFI) on military justice.[1] The appellant nevertheless asserts that her post-trial misconduct provision is per se invalid based on the holdings in *United States v. Dawson,* 10 M.J. 142 (C.M.A.1981), and *United States v. Connell,* 13 M.J. 156 (C.M.A. 1982).[2] We disagree.

In *Dawson,* our superior court struck down a similar post-trial misconduct provision where the convening authority revoked the agreement to cap confinement at 2 years and then approved the adjudged sentence to confinement for 5 years. As the Court described it, the challenged misconduct clause "permit[ted] the convening authority to recapture [his] bargained—away approval power in order to deal with the appellant for his subsequent codal transgressions." *Dawson,* 10 M.J. at 145. Specifically, the Court faulted the misconduct provision as (1) contractually uncertain; (2) an unauthorized expansion of the plea bargaining process that used "contractual artifice" to improperly supplant the means Congress had authorized for the punishment of service members; and (3) lacking a delineated process for making determinations as to whether a breach of the clause had occurred. *Id.* at 146–147, 149.

---

1. Paragraph 6 from the *Sample Format for Pretrial Agreement and Appendix A* states: "I understand the convening authority's obligation to approve a sentence no greater than that provided in Appendix A to this agreement may be canceled after a hearing following the guidelines in RCM 1109, if I commit any offense chargeable under the UCMJ between the announcement of sentence and the convening authority's approval of any sentence. . . . (*See* note 1.)" Air Force Instruction (AFI) 51–201, *Administration of Military Justice,* Fig. 8.1 (21 December 2007). Note 1 further states: "The clauses contained in paragraph 6 of this figure are optional. If used, carefully tailor them to include adequate protections against arbitrary revocation of the agreement to prevent their being declared void as against public policy." *Id.* (citing *United States v. Dawson,* 10 M.J. 142 (C.M.A.1981); *United States v. Connell,* 13 M.J. 156 (C.M.A.1982); Drafter's Analysis, *Manual for Courts–Martial, United States (MCM),* A21 (2007 Ed.)).

2. In *Connell,* the convening authority approved the adjudged sentence because he found the pretrial agreement's promise of a lower sentence had become inoperative due to appellant's violation of the post-trial misconduct clause. The Court cited its opinion in *Dawson,* held the misconduct clause was invalid, and enforced the pretrial agreement as if it had never contained the clause. *Connell,* 13 M.J. at 156–57. *Connell's* rather summary disposition provides little additional insight beyond the rationale contained in *Dawson.*

Subsequent to the Court's decision in *Dawson*, the Rules for Courts–Martial were promulgated pursuant to the President's authority granted under Article 36, UCMJ, 10 U.S.C. § 836. R.C.M. 705 provides guidance for pretrial agreements in the military. In particular, R.C.M. 705(c)(2)(D) specifically authorizes the following as a permissible term of a pretrial agreement:

A promise to conform the accused's conduct to certain conditions of probation before action by the convening authority as well as during any period of suspension of the sentence, provided that the requirements of R.C.M. 1109 must be complied with before an alleged violation of such terms may relieve the convening authority of the obligation to fulfill the agreement[.]

The appellant points out that *Dawson* has not been overruled; however, R.C.M. 705(c)(2)(D) in effect addressed our superior court's concerns by sanctioning the use of post-trial misconduct clauses in pretrial agreements. The Rule eliminated the public policy issue regarding improper expansion of the plea bargaining process, and by incorporating by reference the vacation of suspension process delineated in R.C.M. 1109, we believe that the Court's due process concerns are satisfied.[3]

The appellant contends that a post-trial misconduct provision under R.C.M. 705(c)(2)(D) is only valid when linked to the convening authority's agreement to suspend punishment. Her assertion is without merit. If, as we have determined, R.C.M. 705(c)(2)(D) cleared the legal obstacles arising from *Dawson*, in which the issue was a misconduct clause that required the conven-ing authority to disapprove rather than suspend a portion of the confinement, then the use of such a provision in the appellant's case should be and is lawful. Moreover, the plain language of R.C.M. 705(c)(2)(D) does not limit enforcement of a pretrial agreement misconduct clause to only sentence provisions involving suspension, and neither this Court nor our superior court have expressed such a limitation.[4]

*Appellant's Misconduct Provision*

It is well established that pretrial agreements do not include implied conditions or obligations of post-trial good behavior. *Dean*, 67 M.J. at 230 (citing *United States v. Cox*, 46 C.M.R. 69, 70, 1972 WL 14393 (C.M.A.1972)). Therefore, we must now examine the appellant's actual misconduct provision and determine if it allows the action taken by the convening authority and if the provision and its application comply with R.C.M. 705(c)(2)(D). The appellant's pretrial agreement addresses withdrawal and cancellation of the entire agreement by the parties in a couple of different paragraphs. Paragraph 6, however, is the post-trial misconduct clause in which the appellant agrees that "the convening authority's obligation to approve a sentence no greater than that provided in Appendix A to this agreement may be cancelled after a hearing following the guidelines in RCM 1109(c)(4)" in the event of the appellant's commission of a UCMJ offense between the announcement of sentence and the convening authority's action.

In the absence of ambiguous terms, we interpret the provisions of a pretrial agreement giving the terms their plain meaning

---

3. The drafter's analysis of R.C.M. 705(c) specifically states that R.C.M. 705(c)(2)(D) is based on *Dawson* and observed that "Although the post-trial misconduct provision in *Dawson* was rejected, a majority of the court was apparently willing to permit such provisions if adequate protections against arbitrary revocation of the agreement are provided. However, *see United States v. Connell*, 13 M.J. 156 (C.M.A.1982) in which a post-trial misconduct provision was held unenforceable without detailed analysis. Subsection (D) requires the same protections as revocation of a suspended sentence requires. *See* R.C.M. 1109 and Analysis." *MCM*, A21–40.

4. *But see United States v. Bulla*, 58 M.J. 715, 718, n. 3 (C.G.Ct.Crim.App.2003) (our sister service court questioned, without having to decide, whether or not application of R.C.M. 705(c)(2)(D) would extend to an agreement by the convening authority to disapprove, rather than suspend, a sentence element). Likewise, in his concurring opinion, Chief Judge Baum spoke to the issue: "... I see potential public policy issues that may be generated by allowing a convening authority to avoid his promise to disapprove a portion of a sentence after the accused has fulfilled his promise to plead guilty. A convening authority's promise to disapprove a portion of the sentence is distinctively different from a promise to suspend." *Id.* at 723.

within the context of the entire agreement and the mutual understanding of the parties. *See United States v. Acevedo,* 50 M.J. 169, 172 (C.A.A.F.1999). Here, if the appellant is properly found to have committed a post-trial UCMJ violation before the convening authority takes action on the sentence, the plain meaning of the appellant's misconduct provision permits the convening authority to cancel *only* the promised sentencing relief contained in the Appendix A (the quantum portion) of the pretrial agreement, rather than cancel the entire agreement. Paragraph 6 does not give the appellant the option to withdraw her guilty plea and retry the case. Contrary to the appellant's position, this interpretation is supported by our superior court's decision in *Hunter,* 65 M.J. at 402 (emphasis added): "The misconduct provision of Appellant's PTA complied with R.C.M. 705, and the convening authority did not violate the PTA by *withdrawing from a portion of the sentencing limitation....* "

In addition, as required by R.C.M. 910(f) the appellant's voluntary agreement to and understanding of the meaning and effect of the misconduct provision was established by the military judge during the providence inquiry:

> MJ: Okay. Paragraph six .... it may be several weeks or a couple of months before the convening authority approves the sentence. If, during that timeframe you commit any offenses under the UCMJ, the convening authority can order a hearing. If it's determined that you committed an offense, then he doesn't have to abide by the cap in the second part of this agreement. Did you understand that at the time you signed the agreement?
>
> ACC: Yes, sir.

Therefore, assuming a hearing conducted in compliance with the requirements of R.C.M. 1109 and a proper finding of post-trial misconduct, the convening authority was authorized under the plain terms of the pretrial agreement and the law to take the action that he did.

*The R.C.M. 1109 Hearing*

■ We find, however, that the appellant's post-trial misconduct hearing violated R.C.M. 705(c)(2)(D)'s requirement for a hearing that complies with R.C.M. 1109. The appellant's misconduct provision called for "a hearing following the guidelines in RCM 1109(c)(4)." This is a subsection of R.C.M. 1109 that does not apply to the appellant because it provides for a preliminary hearing to place a probationer in confinement who is already under a suspended sentence to confinement pending completion of the required process under R.C.M. 1109(d). We believe the hearing procedures found at R.C.M. 1109(d) are applicable to the appellant's general court-martial. *See Hunter,* 65 M.J. at 401 (emphasis added) ("We hold that R.C.M. 705(c)(2)(D)'s reference to R.C.M. 1109 requires that the procedural protections for a *suspension and vacation proceeding* under R.C.M. 1109 be extended to withdrawal from sentencing limitations of a PTA based on allegations of misconduct."). Although the procedural protections set forth in R.C.M. 1109 may be waived, there is no evidence that the appellant did so. *See id.* at 400–01.

The government contends that, despite the pretrial agreement's reference to R.C.M. 1109(c)(4), the hearing and decision process substantially complied with the requirements of R.C.M. 1109. We disagree. The procedural protections the appellant received fell short of that to which she was entitled. The Court in *Hunter* declared, "the plain import of [R.C.M. 705(c)(2)(D)'s] reference to R.C.M. 1109 is to require a convening authority to comply with the R.C.M. 1109 procedural protections before the benefit of a PTA can be withdrawn." *Id.* at 402.

The R.C.M. 1109(d) hearing process for a general court-martial sentence requires that, following notice to the probationer, the SPCMCA "shall personally hold" a hearing into the alleged violations of the misconduct provision and then forward a summarized record of the hearing along with a written recommendation to the GCMCA for decision.[5] *See* R.C.M. 1109(d)(1)(A). These re-

---

5. Compare R.C.M. 1109(e)(1)'s language for the procedure for vacating a suspended special court-martial sentence wherein a bad-conduct

discharge or confinement for one year was not adjudged: "the special court-martial convening

quirements were explored in *United States v. Miley,* 59 M.J. 300 (C.A.A.F.2004). In *Miley,* our superior court noted the importance of the requirement for the SPCMCA to personally conduct the hearing, acting as the GCMCA's "eyes and ears during this process" and as the "only official to personally observe the demeanor of the witnesses." *Id.* at 304. Additionally, the Court determined that R.C.M. 1109(d)(1)(D)'s requirement for a "written recommendation" must include the SPCMCA's personal evaluation of the contested facts and a determination of whether the facts warranted vacation. *Id.* at 304–305. The Court also emphasized R.C.M. 1109(d)(2)(A)'s requirement that the GCMCA review the record of the hearing and the SPCMCA recommendation. If the GCMCA decides to vacate the sentence limitation, then he or she must prepare a written statement of the evidence relied upon and the reasons for vacating the sentence limitation. *Id.* at 305. Our superior court also recognized the R.C.M. 1109 duties of the GCMCA as a "substantial right" of the accused. *Id.* (citing *United States v. Smith,* 46 M.J. 263, 268 (C.A.A.F.1997)).

In the appellant's case, the SPCMCA appointed a hearing officer rather than personally holding the hearing. The hearing officer conducted a thorough hearing and provided his report of the evidence and his findings to the SPCMCA. At the hearing the appellant's defense counsel contested the allegations and made objections to the evidence offered by the government. The hearing officer found the evidence supported some of the allegations and not others, and while not ruling on admissibility, he found the defense objections "[did] not lack merit." We find

that the SPCMCA's failure to personally conduct the hearing is error. Moreover, the SPCMCA's written recommendation to the GCMCA did not contain the SPCMCA's own findings and evaluation of the contested evidence, nor did it contain even an express adoption of the hearing officer's report and findings. *See Miley,* 59 M.J. at 304–305. The recommendation consisted of the following entry on a DD Form 455 [6]: "I recommend, in accordance with paragraph 6 of Amn Shook's 2 September 2009 Pretrial Agreement with [the GCMCA], that the sentence limitations provided for in Appendix A be cancelled and Amn Shook's sentence be approved as adjudged." The SPCMCA's failure to personally hold the hearing and the analysis-bare recommendation on the DD Form 455 were insufficient to satisfy the requirements of R.C.M. 1109(d)(1).

The second step of the R.C.M. 1109 process, involving the GCMCA's duties, was defective as well. There is no evidence in the record that the GCMCA prepared a written statement of his reasons for cancelling the pretrial agreement's sentence limitation or the evidence he relied upon in doing so as required by R.C.M. 1109(d)(2)(A).[7] There is no evidence in the record that the GCMCA's section of the DD Form 455 was completed or that any other separate writing satisfying the criteria of the Rule was accomplished by the GCMCA.[8] Rather, it appears the GCMCA's SJA devised a short-cut process. The SJA reviewed the hearing officer's report and then combined that process as a part of the post-trial SJAR procedures under R.C.M. 1106. The SJA addressed the required elements of R.C.M. 1106 and summarized the evidence and findings of the R.C.M.

authority ... *shall cause a hearing to be held* ... " (emphasis added).

6. Department of Defense (DD) Form 455, *Report Of Proceedings To Vacate Suspension of a General Court–Martial Sentence or of a Special Court– Martial Sentence Including a Bad Conduct Discharge Under Article 72, UCMJ, and R.C.M. 1109,* August 1984.

7. Appellant's trial defense counsel included the hearing report as part of appellant's R.C.M. 1105 clemency submission. In an endorsement to the SJAR Supplemental Addendum, the GCMCA stated: "Before taking action [on the sentence under

R.C.M. 1107] I considered this Supplemental Addendum and all matters attached to it [which includes appellant's clemency matters]." But for this clemency submission, there is no evidence in the record that the GCMCA personally reviewed the official and original hearing report and recommendation of the SPCMCA in the context of the process as required under R.C.M. 1109.

8. Page 4 of the DD Form 455 contains separate blocks for the GCMCA to make his or her decision to, in this case, cancel the sentence limitation; and to address the evidence relied on; and the reasons for the decision.

1109 hearing officer. The SJA concluded the appellant violated the misconduct provision of the pretrial agreement and recommended the GCMCA cancel the sentence limitation and approve the sentence as adjudged. The only writings from the GCMCA are the one-sentence endorsement to the SJAR Supplemental Addendum and the signed action of the convening authority under R.C.M. 1107 approving the adjudged sentence.

The failure of both the SPCMCA and GCMCA to adhere to the requirements of R.C.M. 1109 denied the appellant of the substantial right to have the post-trial allegations of misconduct properly considered and evaluated prior to cancellation of the sentence limitation in her pretrial agreement. This constituted a violation of R.C.M. 705(c)(2)(D)'s mandate that the requirements of R.C.M. 1109 must be complied with before an alleged violation of the terms of a pretrial agreement misconduct clause may relieve the convening authority of the obligation to fulfill the pretrial agreement. *Hunter*, 65 M.J. at 402. Under these circumstances, we find the convening authority's revocation of his promise not to approve confinement in excess of 18 months, and his approval of a sentence twice as long at 36 months, was error materially prejudicial to a substantial right of the appellant. Article 59, UCMJ, 10 U.S.C. § 859.

*Conclusion*

Accordingly, we conclude the approved findings are correct in law and fact and, therefore, the findings are affirmed; however, the action of the convening authority in approving the adjudged sentence is set aside. The record of trial is returned to the Judge Advocate General for remand to the convening authority to determine whether further proceedings under R.C.M. 1109 are practicable. If deemed practicable, the R.C.M. 1109 proceedings shall be conducted in a manner consistent with this opinion. If deemed impracticable, the convening authority shall enter a new action in the record consistent with his or her obligations under the terms of the pretrial agreement. Thereafter, Article 66(c), UCMJ, 10 U.S.C. § 866(c), shall apply.